**HALUNEN LAW**
Melissa S. Weiner
*weiner@halunenlaw.com*
Amy E. Boyle
*boyle@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 605-4098
Facsimile:   (612) 605-4099

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212-646-0500

**THE SULTZER LAW GROUP PC**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari
*liparij@thesultzerlawgroup.com*
Adam Gonnelli
*gonnellia@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TERESA VALDES** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br>vs.<br><br>**AMERICAN SUGAR REFINING, INC.,**<br><br>*Defendant.* | **Case No.** _____<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Teresa Valdes, on behalf of herself and all others similarly situated, by and

through her undersigned counsel, brings this class action against American Sugar Refining Inc.

("Defendant").  The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.      This action involves Defendant's misleading and deceptive labeling, marketing, and advertising practices with respect to the agave syrup it sells to consumers throughout the United States. Defendant offers "Organic Agave Nectar" for sale under the brand names "Domino," "C&H" and "Florida Crystals," (the "Products").



2.      The Products' ingredient lists "Organic Agave Nectar" as the sole ingredient and carries the USDA label signifying an organic product.

3.      As alleged herein, the Products' labeling does not disclose that it is adulterated with non-natural, non-organic ingredients.

4.      Plaintiff's testing of the Products reveals the Products contain isomaltose, a component that is not naturally found in pure agave syrup.  Isomaltose is commonly found in high fructose corn syrup ("HFCS") and other non-natural, non-organic sweeteners. Accordingly, upon information and belief, the Products are adulterated with a non-natural, non-organic ingredient, which is not disclosed on the ingredient list.

5.      Consumers who purchase "Organic" agave syrup purchase it believing they are, in fact, receiving an organic product and also one free of non-natural, non-organic ingredients, which Defendant is secretly feeding them.

6.      In addition, the presence of a non-natural, non-organic ingredient renders the "Organic"[1] labeling false and misleading because the Products are adulterated with non-organic ingredients.

7.      Accordingly, Defendant's labeling of the Products as "Organic" is false and misleading.

8.      A reasonable consumer would not deem the Products as "Organic" if he or she knew it was adulterated with non-organic ingredients that are neither a natural component of the advertised Products nor disclosed to consumers on the Products' ingredient list.

9.      Plaintiff brings this class action to enjoin Defendant from misleading consumers through its deceptive marketing and labeling of the Products as "Organic" and to recover the ill-gotten gains Defendant received as a result of its unlawful and deceptive conduct. Plaintiff asserts claims against Defendant for breach of express warranty, violations of the New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and unjust enrichment.

---

[1] Hereafter, the "Organic Blue Agave Nectar" and "USDA Organic" representations will be referred to collectively as "Organic."

## PARTIES, JURISDICTION AND VENUE

10.   Plaintiff Teresa Valdes resides in Bronx, New York. Plaintiff purchased C&H Agave from Amazon.com in 2017.  Plaintiff made this purchase in reliance on Defendant's representations on the Product's packaging that the Product contained only agave syrup, and was "Organic." Plaintiff would not have purchased the Product had she known it was adulterated with foreign, synthetic sweeteners that are not normally present in true agave syrup, or had she known the Product was not "Organic." If the labeling of the Product was truthful, Plaintiff would purchase the Product again in the future.

11.   Defendant is a company organized under the laws of the State of Delaware, with its principal place of business at 1 North Clematis Street Suite #200, West Palm Beach, Florida 33401. On information and belief, the employees who were, and are, involved in the labeling decisions at issue in this Complaint work at Defendant's headquarters in Florida. Most of the documentary evidence relevant to this Complaint is located at Defendant's headquarters in Florida, including the relevant policies and communications.

12.   This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that: (1) there are at least 100 members in the proposed Classes; (2) the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs; and (3) a member of each of the proposed classes is a citizen of a state different from the state of citizenship of the Defendant.

13.   This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff's claims arise out of Defendant's conduct within the State of New York.

4

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).   Plaintiff resides in this District, purchased the Product while in this District and Defendant disseminates false and misleading information regarding the nature, quality, and ingredients of the Products in this District.

## FACTUAL ALLEGATIONS

### Consumers Paid for Pure Organic Agave Nectar Yet Received Adulterated Products

15.     Defendant's labeling of the Products has misled consumers. Plaintiff and class members purchased a Products that listed "Organic Agave Nectar" as the sole ingredient on the Products' ingredient list, yet the Products they purchased contained a non-organic ingredient.

16.     To make agave nectar, sap is extracted from the agave piña, then filtered and heated to break down the carbohydrates into sugar.

17.     Due to a sharp rise in price for the agave piña, the raw material for agave syrup, there has been a corresponding increase in the cost of manufacturing agave syrups. This increase in price has led to the adulteration of agave syrups known as "extension," whereby agave syrup is blended with cheaper sugar sources.

18.     Defendant is engaging in "extension" but has not disclosed that material fact to consumers.

19.     The Products are adulterated with a non-natural, non-organic ingredient, which costs less than pure agave. For example, the difference in price between HFCS and unadulterated agave shows the extent to which Defendant has taken advantage of consumers. Whereas the

2012 wholesale cost of HFCS was \$0.53/kg, the agave syrup pricing was about \$2.80/kg.[2] Due to the current demand for the agave piña, wholesale prices have more than doubled.[3]

20.     Blue Agave, which is most widely used for the production of agave syrup, is cultivated in Mexico where it is then shipped in syrup form to the United States and worldwide for sale by Defendant. Mexico has established the Norma Oficial Mexicana ("NORMA"), a quality assurance specification for agave syrup/nectar. In order to comply with NORMA, Blue Agave cannot contain isomaltose, which has been identified by NORMA as an unnatural component to blue agave syrup.  NORMA specifically states that isomaltose must be completely absent upon ingredient identification in order for a product to be sold as true agave syrup.

21.     Commercial sample testing of agave syrups can be performed to determine whether agave syrup conforms to the above parameters for agave syrup. Eurofins Scientific ("Eurofins"), a highly regarded, accredited and independent product testing laboratory, has been analyzing commercial agave syrups for several years and has found a high level of nonconforming materials.  In the majority of products tested, Eurofins found that the Products had been adulterated due to the presence of maltose and isomaltose in the samples.[4]

22.     Because agave syrups are produced from inulin, isomaltose and maltose are not naturally seen in these products.[5]

---

[2]Jamie L. Willems and Nicholas H. Low, *Major Carbohydrate, Polyl, and Oligosaccharide Profiles of Agave Syrup. Application of this Data to Authenticity Analysis*, 60 Journal of Agricultural and Food Chemistry 8745, (2012).
[3]RAMIN JAHROMI & LARS REIMANN, CRITICAL ASSESSMENT OF METHODOLOGIES USED FOR THE CHARACTERIZATION OF AGAVE SYRUPS 2 (Eurofins, December 2013), *available at* http://www.eurofins.fr/media/9921530/doc_aau11u_agave_white_paper_eurofins.pdf
[4] *Id.*
[5]. *Id.* at 6.

23.     Based on Eurofins testing, Defendant's Products showed indications of added syrup. Specifically, the oligosaccharide profile of the Products showed the presence of isomaltose markers indicating adulteration.

24.     Isomaltose is found in a variety of non-natural, non-organic sweeteners, including HFCS, and thus serves as a marker for the presence of adulteration in agave syrups.[6]

**The Products Are Not "Organic"**

25.     Defendant systematically markets and advertises the Products as "Organic" on the Product's packaging by using the terms "Organic Blue Agave Nectar" and featuring the USDA organic label.

26.     Genuine pure agave syrup is properly described as organic, but the Products are not.

27.     The Products are adulterated with an ingredient that is not naturally occurring, such as HFCS. HFCS is extracted from corn stalks through a chemical enzymatic process resulting in a chemically and biologically novel compound.[7]

28.     Accordingly, HFCS cannot be considered "Organic" because the chemical bonds between its fructose and glucose are broken and rearranged in the manufacturing process. Similarly, non-organic sweeteners cannot be considered "Organic."

27.     In response to an inquiry from FoodNavigator-USA.com in regards to whether HFCS can be considered "natural" the FDA responded with a guidance letter explaining that HFCS is prepared from a high dextrose equivalent corn starch hydrolysate by partial enzymatic

---

[6]*Id.* ("The addition of high fructose syrups from starch, such as those derived from corn, potato or rice, can be detected in agave syrups based on the presence of maltose and isomaltose.") RONALD WROLSTAD, FOOD CARBOHYDRATE CHEMISTRY 99 (John Wiley & Sons, 2012).
[7]*5 Reasons High Frutose Corn SyrupWill Kill You*, DR.MARKHYMAN.COM, http://drhyman.com/blog/2011/05/13/5-reasons-high-fructose-corn-syrup-will-kill-you/#close (last visited January 10, 2017).

conversion of glucose (dextrose) to fructose using an insoluble glucose isomerase enzyme preparation.[8] The glucose isomerase enzyme preparation is fixed (rendered soluble) using safe and suitable immobilization/fixing agents.[9] The FDA concluded:

> The use of synthetic fixing agents in the enzyme preparation, which is then used to produce HFCS, would not be consistent with our [. . .] policy regarding the use of the term "natural." Moreover, the corn starch hydrolysate, which is the substrate used in the production of HFCS, may be obtained through the use of safe and suitable acids or enzymes. Depending on the type of acid(s) used to obtain the corn starch hydrolysate, this substrate itself may not fit within the description of "natural" and, therefore, HFCS produced from such corn starch hydrolysate would not qualify for a 'natural' labeling term.[10]

28.     Furthermore, because non-genetically engineered sources of corn are difficult to find, HFCS is typically produced from genetically modified corn.[11]  Since genetically engineered products are not allowed in organic foods, most organic products simply avoid HFCS and use organic sugar instead.[12]

**Reasonable Consumers Expect that Products Carrying the USDA Organic Logo Will Meet the USDA's Minimum Requirements**

29.     The USDA's National Organic Program sets nationwide standards for the production, processing, delivery, and retail sale of all foods labeled "organic." USDA, National Organic Program, 65 Fed. Reg. 80548 (Dec. 21, 2000) (codified at 7 C.F.R. Part 205). Pursuant to these federal regulations, a food may only bear the USDA Organic label if it uses methods that

---

[8] *Lorraine Heller, HFCS is not 'natural', says FDA.* FOODNAVIGATOR-USA.COM (Apr. 2, 2008), http://www.foodnavigator-usa.com/Suppliers2/HFCS-is-not-natural-says-FDA.
[9] *Id.*
[10] *Id.*
[11] LESLIE DURAM, ENCYCLOPEDIA OF ORGANIC, SUSTAINABLE, AND LOCAL FOOD 107 (1st ed. 2010); see also United States Department of Agriculture, What is Organic Agriculture, http://www.usda.gov/wps/portal/usda/usdahome?contentidonly=true&contentid=organic-agriculture.html ("Organic farms and processors . . . Do not use genetically modified ingredients") (last visited January 10, 2017).
[12] *Id.*

preserve the environment, avoids pesticides and antibiotics, and does not use prohibited ingredients. *See* 7 C.F.R. § 205.105.

30.     Defendant's Products contain label representations that the Products are "USDA Organic" when it is not because of the disqualifying levels of one or more "synthetic" chemicals and "[n]onagricultural (nonorganic) substances" contained in the Products. In particular, the Products contain disqualifying levels of enzymes and acids which are listed as both "synthetic" chemicals and types of "[n]onagricultural (nonorganic) substance" pursuant to 7 C.F.R. § 205.605(b).

31.     A reasonable consumer would expect that when a manufacturer labels and represents a product as "USDA Organic" that the product meets the minimum legal requirements to bear the labeling claims and the seal and that the representations are true. A reasonable consumer would expect that when Defendant claims their Products are "USDA Organic" that its ingredients whether disclosed or undisclosed would not preclude the Products from qualifying as "USDA Organic" as a matter of law.

**Defendant's Omission of a Non-Organic Ingredient on the Ingredients Label and Use of the Terms "Organic" Are Materially Deceptive To Consumers**

### *Defendant's Labeling of the Products are Central to its Overall Strategy of Capturing the Rapidly Expanding Health Food Market*

32.     Defendant's labeling of the Products are part of a larger marketing strategy whereby Defendant markets the Products as a healthier option to other sweeteners, including, ironically, HFCS, because the Products allegedly contains nothing but "Organic" agave. Defendant's unlawful labeling practices are designed to appeal to health-conscious consumers and to hide anything that might cause concern in a health conscious consumer.

33.     As Defendant undoubtedly knows, many American consumers are health conscious and seek out wholesome foods that will allow them to maintain a healthy diet. Because of this, nutrition information is material to consumers when making purchasing decisions. In 2015, sales of natural products grew 9.5% to $180 billion.[13]  Product labels, including nutrition labels, are vehicles to convey nutrition information to consumers which they can and do use to make purchasing decisions. As noted by former Food and Drug Administration Commissioner Dr. Margaret Hamburg during the FDA's Media Briefing on Front-of-Pack labeling on October 20, 2009, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."[14]

34.     The prevalence of nutritional content claims on food packaging in the United States has increased in recent years as manufacturers know this information is material to consumers.

35.     Consumers lack the ability to test or independently ascertain the accuracy of a food product label, especially at the point of sale.

36.     Defendant intends for consumers to rely upon their Products' labels and reasonable consumers do, in fact, rely on Defendant to honestly report the product's ingredients.

---

[13] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

[14] Transcript of FDA's Media Briefing on Front-of-Pack Labeling, (Oct. 20, 2009), available at: http://www.fda.gov/downloads/NewsEvents/Newsroom/MediaTranscripts/ UCM187809.pdf.

37.     Defendant's labeling is central to its marketing of the Products and part of its overall strategy to capture the rapidly expanding healthy food market. As a result, the Products command a premium price.

*Consumers Purchase Agave Syrup as an Alternative to HFCS and other Non-Organic Sweeteners*

38.     Consumers prefer the Products to other sweetener alternatives because they want to *avoid* HFCS and other non-organic sweeteners, the very substance found in the Products.

39.     When purchasing the Product, consumers expect that they are receiving only pure organic agave nectar as stated on the ingredients list. Instead, purchasers of the Products receive syrup that is adulterated with a non-natural, non-organic ingredient.

40.     In addition, studies suggest that the consumption of HFCS is a major factor in weight gain.[15] "Scientists have also shown that . . . [HFCS] doesn't send the same 'I'm full' signal to the brain as when we consume sugar."[16] It also raises several other health concerns, including the way in which it is metabolized by the liver and its association with irritable bowel syndrome.[17]

41.     Consumers choose agave syrup as a healthier alternative to other non-organic sweeteners. If Defendant disclosed the presence of non-organic sweeteners in the Products consumers would not buy it or would not pay a premium for it.

*Defendant Appeals To Consumers' Desire to Purchase Products With A Low Glycemic Index*

42.     The glycemic index is a numerical index that ranks carbohydrates on a scale of 100 based on their rate of conversion into glucose within the human body. Higher values on this

---

[15]B.L. Atwell, *Obesity, Public Health, and the Food Supply*, 4 IND. HEALTH L. REV. 1, 13 (2007).
[16]*Id.*
[17]*Id.*

scale are given to foods that cause the most rapid rise in blood sugar. As a point of reference, pure glucose is given a value of 100 on the glycemic index.

43.     Unadulterated agave syrup has a very high carbohydrate content with the major component being fructose. This high fructose content gives agave syrup its low glycemic index and makes it sweeter than syrups containing appreciable levels of glucose or sucrose. Accordingly, less agave syrup can be used to achieve the same level of sweetness, thus decreasing calorie intake.[18]

44.     The table below illustrates the difference in glycemic index among various types of syrups[19]:

| Sweetener | Glycemic Index |
|---|---|
| HFCS-42 (42% fructose) | 68 |
| HFCS-55 (55% fructose) | 58 |
| Maple Syrup | 54 |
| Honey | 50 |
| HFCS-90 (90% fructose) | 31 |
| Agave Syrup | 15 |

45.     The glycemic index is important to health-conscious consumers who want to keep their blood sugar levels relatively constant:

> If your blood sugar drops too low, you become lethargic and/or experience increased hunger. And if it goes too high, your brain signals your pancreas to secrete more insulin. Insulin brings your blood sugar back down, but primarily by converting the excess sugar to stored fat.

---

[18]Jamie L. Willems and Nicholas H. Low, *Major Carbohydrate, Polyl, and Oligosaccharide Profiles of Agave Syrup. Application of this Data to Authenticity Analysis*, 60 JOURNAL OF AGRICULTURAL AND FOOD CHEMISTRY 8745, (2012).
[19]*Glycemic Index for Sweetners*, SUGAR-AND-SWEETENER-GUIDE.COM, http://www.sugar-and-sweetener-guide.com/glycemic-index-for-sweeteners.html (last visited January 10, 2017).

Therefore, when you eat foods that cause a large and rapid glycemic response, you may feel an initial elevation in energy and mood as your blood sugar rises, but this is followed by a cycle of increased fat storage, lethargy, and more hunger![20]

46.     By adulterating the Products with a non-organic sweetener, Defendant has changed its glycemic index. As a result, a reasonable consumer would no longer consider the Products to have a low glycemic index.

47.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Organic" over comparable products not so labeled, furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products Defendant's competitors truthfully offer as "Organic."

48.     Had Plaintiff and the Class been aware Defendant's agave syrup was not in fact "Organic," they would not have purchased the Products or would not have paid a premium for them.

**Defendant's Mislabeling is Unlawful**

49.     Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the Federal Food, Drug and Cosmetics Act ("FDCA") and its labeling regulations, including those set forth in 21 C.F.R. § 101.

50.     The FDCA provides guidance as to when a reasonable consumer may consider a product to be misbranded. Products that violate the FDCA's labeling regulations can create consumer deception and confusion.  Such conduct, in turn, can be a violation of state consumer

---

[20]Glycemic Index, SELFNUTRITIONDATA, http://nutritiondata.self.com/topics/glycemic-index#ixzz3ah2oujsz (last visited January 10, 2017).

law statutes. Here, Defendant's misleading labeling, marketing, and sale of the Products as "Organic" violates the New York consumer protection statutes.

51. In particular, section 343 subdivision (a) of the FDCA states that a food shall be deemed misbranded if the label "is false or misleading in any particular."

52. To label the Products as "Organic" when they are not creates consumer deception and confusion. A reasonable consumer purchases the Products believing they are "Organic" and contain no ingredients other than organic agave nectar based on the Product's labeling. However, a reasonable consumer would not deem the Products "Organic" or consisting purely of "Organic Agave Nectar" if he or she knew the Products are adulterated with a non-organic sweetener. Defendant's failure to list the non-organic sweetener on its list of ingredients has misled consumers regarding the nature, quality and ingredients of the Products.

53. Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption.

54. Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff and the other Class members to purchase the Products.

55. Plaintiff did not know, and had no reason to know, that the Products were misbranded because they bore "Organic" labeling claims and seals. However, the Products fail to meet the minimum requirements under federal law for those claims and seals.

**Defendant's Wrongful Conduct Caused Plaintiff's and the Class Members' Injuries**

56. As an immediate, direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that it:

a.   paid a sum of money for Products that were not as represented;

b.   paid a premium price for Products that were not as represented;

c.   were deprived the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d.   were deprived the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e.   did not receive a Products that measured up to their expectations as created by Defendant;

f.   ingested a substance that was of a different quality than what Defendant promised; and

g.   were denied the beneficial properties of the organic foods promised.

57.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been injured.

58.   Plaintiff and the Class members paid for Products that were "Organic" and unadulterated, but received Products that were adulterated and not "Organic." The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

59.   Based on Defendant's misleading and deceptive representations, Defendant was able to and did charge a premium price for the Products over the cost of competitive products not bearing an "Organic" label.

60.   Consequently, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

**Rule 9(b) Allegations**

61.   Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

62.     WHO: Defendant made material misrepresentations and failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

63.     WHAT: Defendant made material misrepresentations regarding the true nature and quality of the Products. Specifically, Defendant misrepresented that the Products were "Organic" and failed to disclose that the Products were adulterated.

64.     WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase and consumption throughout the liability period.

65.     WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, inter alia, on the packaging of the Products and its website.

66.     HOW: Defendant made numerous, written material misrepresentations on the packaging of the Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing the Products.

67.     WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and pay a price premium for the Products based on the belief that the Products were unadulterated and "Organic" Defendant profited by selling the Products to thousands of unsuspecting consumers.

16

## CLASS ALLEGATIONS

68.   **Nationwide Classes.**  Pursuant to Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(2), Plaintiff brings this action on behalf of herself and on behalf of a nationwide class (the "Nationwide (b)(2) Class"), defined as follows:

> All persons who purchased one or more of the Products in the United States and its territories during the applicable liability period.

69.   Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of a nationwide class (the "Nationwide (b)(3) Class"),[21] defined as follows:

> All persons who purchased one or more of the Products in the United States and its territories during the applicable liability period.

70.   **New York Classes.** Additionally, or in the alternative, pursuant to Rule 23(a) and (b)(2), Plaintiff brings this action on behalf of herself and on behalf of a statewide class (the "New York (b)(2) Class"), as follows:

> All persons who purchased one or more of the Products in the State of New York during the applicable liability period.

Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of a statewide class (the "New York (b)(3) Class"), defined as follows:

> All persons who purchased one or more of the Products in the State of New York during the applicable liability period.[22]

### Numerosity—Federal Rule of Civil Procedure 23(a)(1)

71.   The members of each of the Classes are so numerous that individual joinder of all Class members is impracticable.

---

[21].This Complaint refers to the Nationwide (b)(2) Class and the Nationwide (b)(3) Class, together, as the "Nationwide Class" or the "Nationwide Classes."
[22].This Complaint refers to the New York (b)(2) Class and the New York (b)(3) Class, together, as the "New York Class" or the "New York Classes."

72.     The precise number of members of the Classes is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive nationwide distribution and sales network.

73.     Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, or published notice.

**Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and (b)(3)**

74.     This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Classes.  All members of the Classes were exposed to Defendant's deceptive and misleading advertising and marketing claims that the Products are "Organic" because one or both of those claims were on the packaging of each and every Products. Furthermore, common questions of law or fact include:

a.     whether Defendant engaged in unfair, unlawful, or deceptive business practices by failing to properly package and label the Products;

b.     whether Defendant's practices violate applicable law cited herein;

c.     whether Defendant made unlawful and misleading "Organic" claims with respect to the Products;

d.     whether Defendant failed to list ingredients on Products' labels and packaging;

e.     whether Defendant failed to disclose the presence of non-organic ingredients in the Products;

f.     whether Defendant falsely represented that the Products contain only "Organic Agave Nectar";

g.     whether Defendant violated N.Y. Gen. Bus. Law § 349 *et seq*. and N.Y. Gen. Bus. Law § 350 *et seq.*;

h.     whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiff and the Classes;

18

      i.      whether Plaintiff and the other members of the Classes are entitled to actual, statutory, or other forms of damages and other monetary relief;

      j.      whether Plaintiff and the other members of the Classes are entitled to equitable relief, including but not limited to injunctive relief and restitution; and

      k.      whether Defendant was unjustly enriched by its deceptive practices.

75. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

## Typicality—Federal Rule of Civil Procedure 23(a)(3)

78. Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through the uniform misconduct described above, were subject to Defendant's false, deceptive, misleading, and unfair advertising and marketing practices and representations, including the false claims that the Products are "Organic." Further, there are no defenses available to Defendant that are unique to Plaintiff.

## Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)

79. Plaintiff is an adequate representative of the members of the Classes because her interests do not conflict with the interests of the other members of the Classes she seeks to represent.

80.     Plaintiff has retained competent counsel with substantial experience prosecuting nationwide consumer class actions in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

81.     Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes, and have financial resources to do so. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

### Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)

82.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

### Superiority—Federal Rule of Civil Procedure 23(b)(3)

83.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

84.     The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

85.     Even if the members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

86.     Given the similar nature of the members of the Classes' claims and the absence of material or dispositive differences in the statutes and common laws upon which the claims are based when such claims are grouped as proposed herein the Classes will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Class Members)**

87.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

89.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

90.     There is no adequate remedy at law.

91.     Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

92.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Organic"—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant

21

made its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

93.     Plaintiff and the New York Class Members have been injured inasmuch as they paid a premium for a product that was—contrary to Defendant's representations— not "Organic." Accordingly, Plaintiff and the New York Class Members received less than what they bargained or paid for.

94.     Defendant's advertising and the Products' packaging and labeling induced the Plaintiff and the New York Class Members to buy Defendant's Products and to pay a premium price for them.

95.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class Members have been damaged thereby.

96.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Class Members are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT II**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Class Members)**

97.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

98.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

99.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

100.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as it misrepresents the Products are "Organic."

101.     Plaintiff and the New York Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which was—contrary to Defendant's representations—not "Organic." Accordingly, Plaintiff and the New York Class Members received less than what they bargained or paid for.

102.     Defendant's advertising, packaging, and the Product's labeling induced the Plaintiff and the New York Class Members to buy Defendant's Products.

103.     Defendant made its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

104.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

105.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

106.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

107.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
**(On Behalf of Plaintiff and All Class Members)**

108.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

109.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and the Class Members based on Defendant's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct.

110.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.    **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.    **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.    **California:**  Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.

e.    **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.     **Connecticut:**   Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.     **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.     **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.     **Florida:**   Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.     **Hawaii:**   Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.     **Idaho:**   Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.     **Illinois:**   Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.     **Indiana:**   Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.     **Kansas:**   Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.     **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.     **Maine:**   Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.     **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.     **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.     **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.     **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.     **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.     **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.     **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.     **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.     **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.     **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.     **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.     **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.     **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.     **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.     **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.    **Pennsylvania:**    Defendant's    practices    were    and    are    in    violation    of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg.    **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.    **South Dakota:**  Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.    **Texas:**    Defendant's    practices    were    and    are    in    violation    of    Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj.    **Utah:**    Defendant's    practices    were    and    are    in    violation    of    Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk.    **Vermont:**  Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.    **Washington:**    Defendant's    practices    were    and    are    in    violation    of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm.    **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

nn.    **Wisconsin:**    Defendant's    practices    were    and    are    in    violation    of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo.    **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

111.    Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are unadulterated and "Organic."

112.    Contrary to Defendant's representations, the Products are not unadulterated or "Organic."

113.    Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

114.    Defendant made its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

115.    As a result of Defendant's violations, Defendant has been unjustly enriched.

116.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and the Class Members are entitled to recover compensatory damages, restitution, punitive, and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**FRAUD UNDER FLORIDA COMMON LAW**
**(On Behalf of Plaintiff and the Nationwide Classes)**

117.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

118.    Plaintiff brings this claim under Florida law on behalf of herself and on behalf of the other members of the Florida and Nationwide Classes.

119.    As discussed above, Defendants provide Plaintiff and the Nationwide Class members with false or misleading material information and fails to disclose material facts about the Products, including, but not limited to the claims regarding the "Organic" qualities. These misrepresentations and omissions are made with knowledge of their falsehood.

120.    The misrepresentations and omissions made by Defendants, upon which Plaintiff and the Nationwide Class members reasonably and justifiably rely, are intended to induce and actually induce Plaintiff and the Nationwide Class members to purchase the Products.

121.    The gravamen, focus, and center of activity of Defendants' fraudulent actions occurred in Florida.

28

122.     The fraudulent actions of Defendants cause damage to Plaintiff and the Class members, who are entitled to damages and other legal and equitable relief as a result.

123.     As a result of Defendants' wrongful conduct, Plaintiff and the Class members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

125.     Therefore, Plaintiff prays for relief as set forth below.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Nationwide Classes)**

126.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

127.     Plaintiff and the other Nationwide Class members formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represented that the Products were "Organic" as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the other Nationwide Class members, on the one hand, and Defendant, on the other.

128.     Defendant made the above-described representations to induce Plaintiff and the other Nationwide Class Members to purchase the Products, and Plaintiff and the other Nationwide Class Members did rely on the representations in purchasing the Products.

129.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the other Nationwide Class Members.

130.     Defendant breached its express warranties about the Products because, as alleged above, the Products are not "Organic." Defendant breached the following state warranty laws:

      a.     Alaska Stat. section 45.02.313;

29

b.    A.R.S. section 47-2313;

c.    A.C.A. section 4-2-313;

d.    Cal. Comm. Code section 2313;

e.    Colo. Rev. Stat. section 4-2-313;

f.    Conn. Gen. Stat. section 42a-2-313;

g.    6 Del. C. section 2-313;

h.    D.C. Code section 28:2-313;

i.    O.C.G.A. section 11-2-313;

j.    HRS section 490:2-313;

k.    Idaho Code section 28-2-313;

l.    810 ILCS 5/2-313;

m.    Ind. Code section 26-1-2-313;

n.    K.S.A. section 84-2-313;

o.    KRS section 355.2-313;

p.    11 M.R.S. section 2-313;

q.    Mass. Gen. Laws Ann. ch. 106 section 2-313;

r.    Minn. Stat. section 336.2-313;

s.    Miss. Code Ann. section 75-2-313;

t.    R.S. Mo. Section 400.2-313;

u.    Mont. Code Anno. Section 30-2-313;

v.    Neb. Rev. Stat. section 2-313;

w.    Nev. Rev. Stat. Ann. section 104.2313;

x.    RSA 382-A:2-313;

y.    N.J. Stat. Ann. section 12A:2-313;

z.    N.M. Stat. Ann. section 55-2-313;

aa.     N.Y. U.C.C. Law section 2-313;

bb.     N.C. Gen. Stat. section 25-2-313;

cc.     N.D. Cent. Code section 41-02-30;

dd.     ORC Ann. section 1302.26;

ee.     12A Okl. St. section 2-313;

ff.     Or. Rev. Stat. section 72-3130;

gg.     13 Pa.C.S. section 2313;

hh.     R.I. Gen. Laws section 6A-2-313;

ii.     S.C. Code Ann. section 36-2-313;

jj.     S.D. Codified Laws, section 57A-2-313;

kk.     Tenn. Code Ann. section 47-2-313;

ll.     Tex. Bus. & Com. Code section 2.313;

mm.     Utah Code Ann. section 70A-2-313;

nn.     9A V.S.A. section 2-313;

oo.     Va. Code Ann. section 59.1-504.2;

pp.     Wash. Rev. Code Ann. section 62A.2-313;

qq.     W. Va. Code section 46-2-313;

rr.     Wyo. Stat. section 34.1-2-313.

131.     As a result of Defendant's breaches of express warranty, Plaintiff and the other Nationwide Class Members were damaged in the amount of the purchase price or the premium they paid for the Products, in amounts to be proved at trial.

132.     Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of herself and the other Nationwide Class Members, placed Defendant on notice thereof.

133.     Therefore, Plaintiff prays for relief as set forth below.

## COUNT VI
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Classes)

134.    Plaintiff incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

135.    Plaintiff asserts this claim in the alternative.

136.    By the acts and conduct described herein, Plaintiff and the other Class Members conferred a benefit on Defendant by purchasing its Product, the proceeds of which were retained by Defendant.

137.    By the acts and conduct described herein, Defendant knowingly accepted and retained the benefit of the money paid by Plaintiff and the other Class Members.

138.    Defendant's retention of the money is inequitable and unjust for the reasons stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of each of the Classes described in this Complaint, respectfully request that:

A.    The Court certify the Classes pursuant to Federal Rule of Civil Procedure 23 and adjudge Plaintiff and her counsel to be adequate representatives thereof;

B.    The Court enter an Order requiring Defendant to pay to Plaintiff and other members of the Classes economic, monetary, consequential, compensatory, or statutory damages, whichever is greater; and, if Defendant's conduct is proved willful, awarding Plaintiff and the other members of the Classes exemplary damages to the extent provided by law;

C.    The Court enter an Order awarding restitution and disgorgement of all monies Defendant acquired by means of any act or practice declared by this Court to be wrongful, or any other appropriate remedy in equity, to Plaintiff and the other members of the Classes;

D.    The Court enter an Order awarding declaratory and injunctive relief as permitted

by law or equity, including: declaring that Defendant is responsible for notifying the Class members of the pendency of the suit; enjoining Defendant from continuing the unlawful practices set forth above; directing Defendant to cease its deceptive and misleading marketing campaign in which it describes the Products as "Organic"; and directing Defendant to disgorge all monies Defendant acquired by means of any act or practice declared by this Court to be wrongful;

      E.      The Court enter an Order awarding Plaintiff, individually and on behalf of the other members of the Classes, her expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

      F.      The Court enter an Order awarding to Plaintiff individually and on behalf of the other members of the Classes pre- and post-judgment interest, to the extent allowable; and

      G.      For such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

    Plaintiff and the Class members hereby demand a trial by jury.

Dated: September 5, 2017

              **THE SULTZER LAW GROUP PC**


                    Jason P. Sultzer /s/

**By:** _____
Jason P. Sultzer
sultzerj@thesultzerlawgroup.com
Joseph Lipari
liparij@thesultzerlawgroup.com
Adam Gonnelli
gonnellia@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212-646-0500


**HALUNEN LAW**
Melissa S. Weiner
weiner@halunenlaw.com
Amy E. Boyle
boyle@halunenlaw.com
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone:       (612) 605-4098
Facsimile:       (612) 605-4099


*Counsel for Plaintiff and the Proposed Class*