**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner
*mweiner@pswlaw.com*
800 La Salle Avenue
Suite 2150
Minneapolis, Minnesota  55402
Telephone: (612) 389-0601
Facsimile: (612) 389-0610

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**THE SULTZER LAW GROUP PC**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari
*liparij@thesultzerlawgroup.com*
Adam Gonnelli
*gonnellia@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA VALDES, *individually and on behalf of all others similarly situated*,<br><br>           Plaintiff,<br><br>   – against –<br><br>AMERICAN SUGAR REFINING, INC.,<br><br>           Defendant. | No. 1:17-cv-05213-CBA-PK<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICAN SUGAR REFINING, INC.'S MOTION TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 2

ARGUMENT ....................................................................................................... 4

I.      Federal Law Does Not Preempt Plaintiff's Claims.................................. 4

II.     The FAC Is Plausible, And Plaintiff Has Standing................................. 9

        A.     The FAC Is Plausible .................................................................. 9

        B.     Plaintiff Has Standing Under Article III Of The U.S. Constitution..................... 14

III.    The FAC Satisfies Federal Rule Of Civil Procedure 9(b) ................... 16

IV.     Plaintiff Has Standing To Represent Class Members From Other States And This
        Court Has Jurisdiction Over Those Claims ........................................... 20

        A.     Whether Plaintiff Can Represent Out Of State Residents Is An Issue For
               Class Certification And Is Not Appropriate For Resolution At The
               Pleading Stage............................................................................ 20

        B.     This Court Has Specific Personal Jurisdiction Over The Claims Of Non-
               Resident Class Members............................................................. 23

        C.     Plaintiff's Claims Under The Consumer Protection Laws Of States Other
               Than New York Are Well-Pled And Should Not Be Stricken ........... 27

V.      Plaintiff's Unjust Enrichment Claim Is Well-Pled and Is Not Duplicative of The
        Other Causes Of Action .......................................................................... 31

VI.     Plaintiff Has Standing To Seek Injunctive Relief.................................. 32

CONCLUSION.................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaronson v. Am. Med. Sys., Inc.*,
  No. 09-CV-2487, 2010 WL 3603618 (E.D.N.Y. Sept. 7, 2010) ...............................................8

*Ackerman v. Coca-Cola Co.*,
  No. 09-CV-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. Jul. 17, 2013)....................32, 33

*Albert v. Blue Diamond Growers*,
  151 F. Supp. 3d 412 (S.D.N.Y. 2015)........................................................................................34

*Alvarez v. NBTY, Inc.*,
  No. 17-cv-00567, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017) .........................23

*In re Amla Litig.*,
  No. 16- cv-6593, 2017 U.S. Dist. LEXIS 175950 (S.D.N.Y. Oct. 24, 2017).........................32

*Andrews v. Metro North Commuter R.R. Co.*,
  882 F.2d 705 (2d Cir. 1989)........................................................................................................5

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)....................................................................................10, 11, 12, 14

*Arizona v. United States*,
  567 U.S. 387 (2012)......................................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................6, 9, 10, 11, 12

*In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*,
  621 F.3d 781 (8th Cir. 2010) ...............................................................................................7, 8

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
  No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015).........................34

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ...............................................................................22, 32

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) (Weinstein, J.)................................................................33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................9, 10, 11, 12

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
 373 F.3d 296 (2d Cir. N.Y. 2004) ....................................................................31

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*,
 582 U.S. ___, 137 S. Ct. 1773, 1783,198 L. Ed. 2d 395 (2017) ......................2, 23, 24, 25, 26

*Bryant v. Food Lion, Inc.*,
 774 F. Supp. 1484 (D.S.C. 1991) ....................................................................28

*Cassese v. Washington Mutual, Inc.*,
 255 F.R.D. 89 (E.D.N.Y 2008) ........................................................................30

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*,
 No. 17-2161, 2018 U.S. Dist. LEXIS 43974 (E.D. La. Mar. 19, 2018) ................23

*Chaluisan v. Simsmetal E. LLC*,
 698 F. Supp. 2d 397 (S.D.N.Y. 2010) ..............................................................31

*Chen-Oster v. Goldman, Sachs & Co.*,
 877 F.Supp.2d 113 (SDNY 2012) ....................................................................28

*Chenensky v. NY Life Ins. Co.*,
 2011 WL 1795305 (S.D.N.Y Apr. 27, 2011) ....................................................28

*In re Chinese-Manufactured Drywall Products Liability Litigation*,
 MDL No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 30, 2017) ..........23, 24, 25

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*,
 865 F.3d 71 (2d Cir. 2017) ..............................................................................16, 17, 18, 19

*In re ConAgra Foods Inc.*,
 908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................................19

*Danvers Motor Co. v. Ford Motor Co.*,
 432 F.3d 286 (3d Cir. 2005)..............................................................................14

*Davidson v. Kimberly-Clark Corp.*,
 873 F.3d 1103 (9th Cir. 2017) ..........................................................................33, 34

*Day v. Air Methods Corp.*,
 No. 17-cv-183, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017) ............23

*Decker v. Vermont Educ. Television, Inc.*,
 13 F. Supp. 2d 569 (D.Vt. 1998).......................................................................5

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
 822 F.2d 1242 (2d Cir. 1987).............................................................................17

*Eagle One Roofing Contractors, Inc. v. Acquafredda*,
No. 16-CV-3537-NGG, 2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) ...........................17, 18

*Ebin v. Kangadis Family Mgmt. LLC*,
45 F. Supp. 3d 395 (S.D.N.Y. 2014) .......................................................................................30

*Ersler v. Toshiba Am., Inc.*,
2009 U.S. Dist. LEXIS 14374 (E.D.N.Y. Feb. 24, 2009) ........................................................29

*Farash v. Cont'l Airlines, Inc.*,
574 F. Supp. 2d 356 (S.D.N.Y. 2008), aff'd, 337 Fed. Appx. 7 (2d Cir. 2009) .......................8

*Farinella v. PayPal, Inc.*,
611 F. Supp. 2d 250 (E.D.N.Y. 2009) .....................................................................................30

*Fero v. Excellus Health Plain, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) .....................................................................................16

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
783 F.3d 395 (2d Cir. 2015) ....................................................................................................16

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
No. 17-cv-00564, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017) .......................24

*Fonseca v. Goya Foods, Inc.*,
No. 16-civ-02559, 2016 U.S. Dist. LEXIS 121716 (N.D. Cal. Sept. 8, 2016) .......................30

*Forcellati v. Hyland's Inc.*,
876 F. Supp. 2d. 1155 (C.D. Cal. 2012) ....................................................................22, 29, 30

*Fort Worth Empls. Ret. Fund v. J.P. Morgan Chase & Co.*,
862 F. Supp. 2d 322 (S.D.N.Y. 2012) .....................................................................................22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................................................................14

*In re Frito-Lay North America, Inc. All Natural Litigation*,
No. 12-MD-2413 RRM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............................18, 19

*Galicia v. Ice Cream House on Bedford Ave LLC*,
No. 16-cv-6738-CBA, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017) (Amon,
J.) ............................................................................................................................................10

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ....................................................................................9, 11, 12, 13

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
317 F.R.D. 374 (S.D.N.Y. 2016) .............................................................................................33

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985)........................................................................17, 18, 19

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ..................................................................................29

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) .......................................................16, 18, 19

*Hanson v. Denckla*,
   357 U.S. 235 (1958)........................................................................................................25

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir. 1994)..............................................................................................31

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................13, 15, 18

*Int'l Controls Corp. v. Vesco*,
   556 F.2d 665 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978)...........................4

*Ironforge.com v. Paychex, Inc.*,
   747 F.Supp.2d 384 (W.D.N.Y 2010) ..........................................................................28

*James v. Penguin Grp. (USA) Inc.*,
   No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769 (S.D.N.Y. Apr. 11, 2014) .........................34

*John v. Whole Foods Mkt. Grp., Inc.*,
   858 F.3d 732 (2d Cir. 2017)..................................................................................14, 15

*Kaatz v. Hyland's Inc.*,
   No. 16........................................................................................................................22

*Karlin v. IVF America, Inc.*,
   712 N.E.2d 662 (N.Y. 1999)........................................................................................34

*Keiler v. Harlequin Enterprises Ltd.*,
   751 F.3d 64 (2d Cir. 2014)....................................................................10, 11, 12

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017)........................................................................32

*Langan v. Johnson & Johnson Consumer Cos.*,
   2018 U.S. App. LEXIS 20592 (2d Cir. July 24, 2018)....................................20, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................................14

*Marentette v. Abbott Labs., Inc.*,
    201 F. Supp. 3d 374 (E.D.N.Y. 2016), aff'd, 886 F.3d 112 (2d Cir. 2018)..................5, 6, 7, 8

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y 2015)..................28

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................29, 30

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) ..................20

*Mut. Int'l Exp. Co. v. Napco Indus., Inc.*,
    316 F.2d 393 (D.C. Cir. 1963) ..................25

*Myun-Uk Choi v. Tower Research Capital LLC*,
    890 F.3d 60 (2d Cir. 2018)..................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)..................21

*Nicosia v. Amazon.com, Inc.*,
    84 F. Supp. 3d 142 (E.D.N.Y. 2015) ..................32, 34

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)..................8

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 JG, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ..................18, 20

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
    847 F.3d 92 (2d Cir. 2017)..................9, 10, 11

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002)..................24

*Quesada v. Herb Thyme Farms, Inc.*,
    361 P.3d 868 (Cal. 2015) ..................7, 8

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)..................13

*Ramirez v. Dollar Phone Corp.*,
    No. 09-CV-2290, 2009 U.S. Dist. LEXIS 92972 (E.D.N.Y. Oct. 1, 2009)..................22

*Reid v. GMC Skin Care USA Inc.*,
    No. 8:15-CV-277 (BKS), 2016 U.S. Dist. LEXIS 14001
    (N.D.N.Y. Jan. 15, 2016) ..................32

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*,
775 F.3d 154 (2d Cir. 2014)........................................................................21

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006)........................................................22

*Sanchez v. Launch Tech. Workforce Sols, LLC*,
No. 1:17-cv-1904-ELR, 2018 U.S. Dist. LEXIS 28907
(N.D. Ga. Jan. 26, 2018) ............................................................................26

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994).....................................................................4, 19

*Sloan v. General Motors, LLC.*,
No. 16-cv-07244, 287 F. Supp. 3d 840 (C.D. Cal. Feb. 7, 2018) ..............23, 25, 26

*Spratley v. FCA US LLC*,
No. 3:17-cv-0062, 2017 ..........................................................................25, 26

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)......................................................................................20

*Subsolutions, Inc. v. Doctor's Assocs., Inc.*,
62 F. Supp. 2d 616 (D. Conn. 1999)............................................................5

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*,
No. 6:17-cv-1734, 2018 U.S. Dist. LEXIS 79578 (M.D. Fla. Apr. 4, 2018).........23

*Tomasino v. Estee Lauder Cos.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ......................................................13, 34

*In re Trilegiant Corp.*,
11 F. Supp. 3d 82 (D. Conn. 2014)............................................................27

*In re Tronox Sec. Litig.*,
No. 09 Civ. 6220, 2010 U.S. Dist. LEXIS 67664 (SDNY June 28, 2010).........28

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
No. 13-CV-7639-LTS, 2015 WL 4040882 (S.D.N.Y. July 2, 2015)................16

*Von Koenig v. Snapple Beverage Corp.*,
713 F. Supp. 2d 1066 (E.D. Cal. 2010)......................................................19

*Waldman v. New Chapter, Inc.*,
714 F. Supp. 2d 398 (E.D.N.Y. 2010) .......................................................15

*Wenokur v. AXA Equitable Life Ins. Co.*,
   No. 17-cv-00165-PHX, 2017 U.S. Dist. LEXIS 162812 (D. Ariz. Oct. 2,
   2017) ...........................................................................................................................26

*Werdebaugh v. Blue Diamonds Growers*,
   No. 12-civ-02724, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) .........................30

**Statutes**

California's Unfair Competition Law .............................................................................34

Federal Rule Of Civil Procedure 9(b) .............................................16, 17, 18, 19, 20, 27

Federal Rules 8 and 9(b) .................................................................................................1

FRCP R. 12(f) ................................................................................................................27

New York General Business Law sections 349 and 350 ...................................................4

Rule 8 ......................................................................................................................11, 12

Rule 8(d)(2) ...................................................................................................................31

Rule 9(b)'s ....................................................................................................................19

Rule 12(b)(6) ........................................................................................................6, 9, 10

Rule 23 ............................................................................................................20, 21, 24

Plaintiff Teresa Valdes ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendant American Sugar Refining, Inc. ("Defendant" or "ASR").  *See* Notice Mot. Dismiss; Mem. Supp. Def.'s Mot. Dismiss ("Mem."). For the reasons below, ASR's motion should deny it in its entirety.

## INTRODUCTION

Defendant manufactures and sells "Blue Agave Nectar" (the "Product" or "Products") by expressly representing Organic Blue Agave Nectar Syrup is the sole ingredient in the Products. This representation is false.  As alleged in the First Amended Class Action Complaint, testing reveals that the Products have been adulterated with other sweeteners which are cheaper to produce, but are not revealed on the Products' ingredient list.  In its moving papers, Defendant advances a number of arguments for dismissal, all of which are without merit.

First, Defendant contends that Plaintiff's claims are preempted by federal laws regarding organic certification.  But, Plaintiff's claims do not challenge the Products' organic certification. Instead, Plaintiff alleges that a reasonable consumer would be deceived by Defendant's representation that the Products contained only blue agave nectar syrup and Defendant's material omissions regarding the Products containing isomaltose," a claim that does not conflict with the organic certification of the Products in any way.

Next, Defendant misstates and overstates the pleading requirements of Federal Rules 8 and 9(b) in an attempt to argue that Plaintiff's cause of action for fraud under Florida common law is not plausible or pled with sufficient particularity.  In actuality, Plaintiff has met both pleading standards by alleging the who, what, when, where, how, and why of her claim and supporting that claim with not one, but two sets of testing.

Defendant next challenges Plaintiff's standing to bring her claim on several grounds. However, Plaintiff has standing to challenge Defendant's deceptive practices because she paid a

premium price for the Products based on the single ingredient "blue agave nectar" misrepresentations.  Additionally, the Second Circuit has recently held that whether Plaintiff can represent consumers from other states suing under those state laws is a question for certification, not standing.  *See infra* Section IV.  Defendant's argument that Plaintiff lacks standing to pursue injunctive relief and to assert claims regarding Products she did not purchase fails because most courts which have considered these issues in detail have found that standing exists.

Defendant also asks the Court to extend the recent U.S. Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 582 U.S. ___, 137 S. Ct. 1773, 1783,198 L. Ed. 2d 395 (2017), beyond the context of state court mass torts, and to declare that this Court does not have personal jurisdiction over the claims of class members from other states, something that district courts across the nation have declined to do.

Finally, Plaintiff's unjust enrichment claim and causes of action under the consumer protection laws of states other than New York are well-pled and should not be dismissed.

## FACTUAL ALLEGATIONS

This proposed class action challenges ASR's deceptive labeling and marketing of the "Blue Agave Nectar" Products[1] it sells under the brand names "Domino," "C&H," and "Florida Crystals." ¶ 1.  The Products' labeling identifies "Organic Blue Agave Nectar Syrup" as the sole ingredient. ¶¶ 2-3.  ASR labels the Products as containing only "Blue Agave Nectar" to appeal to health-conscious American consumers, who want to avoid high fructose corn syrup ("HFCS") and other sweeteners. ¶¶ 25, 33-34, 36-38, 41, 47.  Plaintiff has had the Products tested, however, and the testing reveals they contain isolmaltose. ¶ 4.  Eurofins, an international independent scientific

---

[1] The term "Products" has the same meaning as in the First Amended Class Action Complaint. *See* First Am. Compl. ¶ 1, ECF No. 22 ("FAC").  All references to "¶" are to paragraphs in the FAC.

testing facility, has also tested the Products and found isomaltose markers indicating adulteration. ¶¶ 21, 23.

Isomaltose is not naturally present in agave syrup. ¶ 4.  Citing a 2013 Eurofins white paper, the FAC alleges that "[b]ecause agave syrups are produced from inulin, isomaltose and maltose are not naturally seen in these products." ¶ 22 (citing RAMIN JAHROMI & LARS REIMANN, EUROFINS, CRITICAL ASSESSMENT OF METHODOLOGIES USED FOR THE CHARACTERIZATION OF AGAVE SYRUPS 6 (Dec. 2013)).  Citing a 2012 book, Plaintiff alleges isomaltose "serves as a marker for the presence of adulteration in agave syrups." ¶ 24 (citing RONALD WROLSTAD, FOOD CARBOHYDRATE CHEMISTRY 99 (John Wiley & Sons, 2012)).  Indeed, Mexico's quality assurance specification for agave syrup, the Norma Oficial Mexicana ("NORMA"), identifies isomaltose as an unnatural component to blue agave syrup and requires blue agave to be free from isolmatose upon ingredient identification. ¶ 20.  Isomaltose is, however, commonly found in HFCS and other sweeteners. ¶ 4.  Thus, based on her testing and Eurofins' testing, Plaintiff alleges the Products are adulterated with other sweeteners that ASR does not disclose on the ingredients list. ¶¶ 4, 20-24.

Furthermore, ASR has an incentive to engage in "extension" of agave syrup by blending it with cheaper sugar sources because the price of the raw material for agave syrup has risen sharply, increasing the cost of manufacturing. ¶¶ 16-19.  The 2012 wholesale cost of HFCS was $0.53/kg, while agave syrup cost about $2.80/kg. ¶ 19.  Due to the current demand for the agave piña, wholesale prices have more than doubled. *Id.*

ASR's labeling of the Products as containing only "Blue Agave Nectar" is false and misleading and deceives reasonable consumers because the Products are adulterated with other sweeteners. ¶¶ 4-8, 10, 15, 19-25, 33, 39, 51.  ASR knew and intended that consumers would pay a premium for products that purported to contain only "Agave Nectar" over comparable products.

¶¶ 25, 33, 36-37, 47, 53.  In reasonable reliance on ASR's Product labeling, Plaintiff and other consumers purchased the Products at a premium price and thereby suffered an injury. ¶¶ 5, 8, 10, 19, 25, 33-34, 36-39, 41, 47-48, 51, 55-59.

Plaintiff, a resident of the Bronx, New York, personally purchased C&H Agave from Amazon.com in 2017 in reliance on ASR's representations that the Product only contained agave syrup. ¶ 10.  Despite being deceived, if the labeling of the Product were truthful, Plaintiff would purchase the Product again in the future. *Id.*

Plaintiff brings claims on behalf of a Nationwide Class and a New York Class. ¶¶ 66-68. On behalf of the New York Class, Plaintiff asserts claims for violation of New York General Business Law sections 349 and 350. ¶¶ 87-107.  On behalf of the Nationwide Class,[2] Plaintiff asserts claims for: violation of the consumer protection statutes of 40 states and the District of Columbia; fraud under Florida common law; breach of express warranty under the laws of 43 states and the District of Columbia; and unjust enrichment. ¶¶ 108-38.  Among other things, Plaintiff prays for monetary, declaratory, and injunctive relief. FAC pp. 28-29.

## ARGUMENT

## I.   Federal Law Does Not Preempt Plaintiff's Claims

At issue before this Court is a Motion to Dismiss the FAC.  Defendant spends considerable effort discussing the *initial* Complaint filed in this action (ECF No. 1), and the impetus for Plaintiff's amendments. *See* Mem. at 6-9.  However, such arguments are improper and should be ignored.  It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.

---

[2] The FAC states that Plaintiff brings her third claim on behalf of "All Class Members," which is substantively the same as asserting the claim on behalf of the Nationwide Class. *See* FAC p. 20.

1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978).  While statements from the original complaint may be used as impeachment evidence at trial, the court should not consider such statements on a motion to dismiss. *See Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *Decker v. Vermont Educ. Television, Inc.*, 13 F. Supp. 2d 569, 572 (D.Vt. 1998); *Subsolutions, Inc. v. Doctor's Assocs., Inc.*, 62 F. Supp. 2d 616, 621 (D. Conn. 1999) (emphasis added).  As such, Defendant's arguments comparing the FAC to the original Complaint in light of the *Marentette* decision (discussed more fully *infra*), are not persuasive.

Taking the allegations as true in the operative FAC, Plaintiff's claims are not preempted. The Supremacy Clause of the United States Constitution, sets forth the established doctrine that when a conflict of law arises, the higher authority of law will displace the lower authority. *See* U.S. Const. art. VI., § 2; *see also Arizona v. United States*, 567 U.S. 387, 399 (2012).

*First*, this well-established doctrine does not apply in this consumer protection action concerning a reasonable consumer's purchase of the Product.  Plaintiff's FAC asserts six causes of action based on consumer protection and false, misleading, and deceptive advertising theories. *See* ¶¶ 1, 87-138.  None of these causes of action, nor any of the other allegations in the FAC challenge the "Organic" certification or the process by which such a certification was obtained.  In fact, the FAC is devoid of such allegations. *See generally* FAC.  Rather, the FAC concerns Defendant's omission of ingredients on the Ingredient List such that a reasonable consumer is deceived at the point of purchase. *See* ¶¶ 8, 15, 19, 39, 48.  As such, the laws under which the claims asserted in the FAC are brought are not in conflict with any higher authority *because there is no higher authority*.  This case merely concerns whether a reasonable consumer is misled when

purchasing a product that contains ingredients, and is therefore adulterated, omitted from the Ingredient List.

*Second*, even assuming the Organic Foods Production Act of 1990 ("OFPA") is applicable here, Plaintiff's claims are still not preempted. Plaintiff alleges that the Product advertises that it contains *one single ingredient*. *See* ¶ 2 (emphasis added). Plaintiff further alleges that, in fact, the Product contains *additional ingredients*. *See* ¶ 3 (emphasis added). The additional ingredients alter the Product in such a way that it is material to a reasonable consumer as consumers pay a premium for a product purported to contain only "Agave Nectar." *See* ¶¶ 38-48. That alone is the false, misleading, and deceptive premise on which Plaintiff rests her case. As discussed herein, neither the "Organic" certification nor the process by which such a certification was obtained are being challenged. Assuming the allegations are true and drawing all reasonable inferences in the light most favorable to the Plaintiff (the standard on a Rule 12(b)(6) motion), the claims alleged in the FAC are sufficient pled to survive such a challenge. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant's reliance on *Marentette* is not persuasive. *See* Mem. 6-9. In *Marentette*, consumers brought a putative class action against the manufacturer of infant formula, alleging that the "organic" formula contained other prohibited ingredients. *See Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 377 (E.D.N.Y. 2016), aff'd, 886 F.3d 112 (2d Cir. 2018). In *Marentette*, the plaintiffs' claims were based on the alleged false labeling of the products as "organic" and they challenged the certification determination **directly**. *Id.* Here, Plaintiff's claims are clearly distinguishable. Plaintiff challenges Defendant's omission of other ingredients such as HFCS from the Ingredient List of the Product, alleging that such omission is highly relevant given the premium paid by consumers for pure "Organic Blue Agave Nectar Syrup" – not whether the

inclusion of the additional ingredients renders the Product non-organic. *See* ¶¶ 3, 4, 7, 15, 18, 19. Plaintiff's initial testing of the Product revealed the presence of additional ingredients, such as HFCS.  *See* ¶¶ 4, 23.  The crux of Plaintiff's allegations is that the labeling of the Product is false and misleading to consumers because the Product contains other ingredients not listed on the Ingredient List or label. *See* ¶ 6.  Accordingly, Plaintiff's claims in no way challenge the organic certification nor the process and, therefore, do not conflict with OFPA's regulatory scheme.

In *Marentette*, the court discussed the distinction articulated in *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010), that "state law challenges to the certification determination itself" (which would be preempted), are different than "state law challenges to the facts underlying certification" (which would not be preempted). *Id.* at 797.  The *Marentette* Court specifically reaffirmed that such challenges falling in the latter category – those pertaining to the facts underlying certification – would not be preempted.  Taking the allegations in the FAC on their face, there can be no confusion that the claims in the instant case fall squarely within the latter, non-preempted category.  The FAC is devoid of allegations related to the organic certification, and frankly, whether the Product is, in fact, USDA Organic certified is irrelevant to the action.  Accordingly*,* Defendant's argument that Plaintiff's claims "strike at the very heart of the OFPA certification process and are therefore preempted by it" is both flawed and unfounded. *See* Mem. at 7.

Plaintiff's position is further supported by the facts in *Quesada v. Herb Thyme Farms, Inc.*, 361 P.3d 868 (Cal. 2015).  In *Quesada*, the plaintiff alleged the defendant intentionally sold herbs using an "organic" label even though it knew the herbs had not been certified as organic. *See id.* at 882-83.  The court held that claims of "intentional commingling and fraudulent substitution" of non-organic products with certified "Organic" products were not preempted. *Id.* at 870.  The court

further explained that "matters related to certifying production as organic" are preempted, while "enforcement against abuse of the label 'organic'" is not. *Id.* Courts have warned that preemption is not appropriate under these circumstances because to hold otherwise would grant "organic producers a de facto license to violate state fraud, consumer protection, and false advertising laws with relative impunity." *Aurora*, 621 F.3d 781, at 799; *Quesada*, 361 P.3d at 883. Similar to *Quesada*, Plaintiff alleges that labeling the Product as only containing "Organic Blue Agave Nectar Syrup" is false and misleading because the Product is adulterated with other "non-organic" sweeteners, such as HFCS, in addition to "organic" agave nectar. *See* ¶ 6. The essence of Plaintiff's claim is that Defendant's packaging and marketing represents the Product contains only one ingredient, and that representation is false. *See Quesada*, 361 P.3d at 883. Therefore, Plaintiff's claims challenge the facts underlying the certification (*i.e.*, that Defendant intentionally adulterated the Product with other ingredients), not the certification itself. *See* ¶¶ 6, 18. The deceptive conduct alleged in the FAC is similar to the non-preempted conduct in *Quesada* and, Plaintiff's claims are not preempted. *See* ¶¶ 1, 9, 47, 51, 53, 55.

*Third*, the very premise of preemption is fact-based and, therefore, not appropriate at the pleading stage. In evaluating a 12(b)(6) motion, a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "[A] district court may grant a motion to dismiss based on federal preemption, if the defense can easily be determined from the pleadings." *Marentette*, 201 F. Supp. 3d at 377-78 (citing *Aaronson v. Am. Med. Sys., Inc.*, No. 09-CV-2487, 2010 WL 3603618, at *1 (E.D.N.Y. Sept. 7, 2010) and *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2008), aff'd, 337 Fed. Appx. 7 (2d Cir. 2009) (preemption is a question of law)). Here, Plaintiff's FAC does exactly that. The FAC makes specific, non-conclusory

allegations of false, misleading, and deceptive advertising. *See supra.* Further, and most importantly, a determination of preemption at this early stage is not "easily determined" and would be premature.

Based on the foregoing, Plaintiff's claims are not preempted.

## II.     The FAC Is Plausible, And Plaintiff Has Standing

### A.     The FAC Is Plausible

ASR argues the FAC lacks factual allegations to support Plaintiff's theory of liability. Mem. 10-13. The Court should reject ASR arguments.

"When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"); *accord Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 65 (2d Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "***The plausibility standard is not akin to a 'probability requirement,'*** but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (emphasis added); *accord Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("*Twombly*") (citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a

complaint's factual allegations." *Id.* (citation omitted).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*

Critically, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief ***where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible***." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis added) (citations omitted); *accord Physicians Healthsource, Inc.*, 847 F.3d at 96-97; *Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 71 (2d Cir. 2014) ("We underscore that *Twombly* does not impose a probability requirement at the pleading stage. It simply requires factual allegations sufficient to raise a reasonable expectation that discovery is likely to generate evidence of liability." (citation omitted)); *Galicia v. Ice Cream House on Bedford Ave LLC*, No. 16-cv-6738-CBA, 2017 WL 6759299, at *1 (E.D.N.Y. Dec. 29, 2017) (Amon, J.).  The U.S. Court of Appeals for the Second Circuit has "reject[ed] [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC*, 604 F.3d at 120-21.

Here, Plaintiff's allegations give rise to substantially more than a "sheer possibility" that ASR has acted unlawfully.  Plaintiff alleges that testing by Eurofins, as well as her own testing, shows the Products contain isolmaltose, which is a marker indicating adulteration of agave syrup, and that "[b]ecause agave syrups are produced from inulin, isomaltose and maltose are not naturally seen in these products." ¶¶ 4, 20-24.  Plaintiff further alleges "[t]he addition of high fructose syrups from starch, such as those derived from corn, potato or rice, can be detected in agave syrups based on the presence of maltose and isomaltose" (¶ 24 n.5), and that NORMA,

Mexico's quality assurance specification for agave syrup, identifies isomaltose as an unnatural component to blue agave syrup and requires blue agave to be free from isolmatose upon ingredient identification (¶ 20).  Plaintiff also alleges isomaltose is commonly found in HFCS and other sweeteners. ¶ 4.  Based on these non-conclusory factual allegations, which the Court should accept as true at this stage and consider in the light most favorable to Plaintiff (*see Galper*, 802 F.3d at 443), it is substantially more than plausible that the Products are adulterated with other sweeteners.

Despite Plaintiff's well-supported factual allegations, ASR argues "the FAC is entirely dependent on the conclusory statement that 'the Products are adulterated' with largely unidentified substances ('sweeteners, such as HFCS')." Mem. 10.  ASR is wrong for the reasons discussed herein. *See supra*; *see* ¶¶ 4, 20-24.

According to ASR, "Plaintiff must provide (at a minimum) allegations that identify the adulterant, the level of adulteration, and how and when the product became adulterated."[3] Mem. 10.  ASR further contends that Plaintiff has not plausibly alleged the Products are adulterated because the FAC has not adequately connected agave manufacturers in Mexico that have engaged in extension with ASR. Mem. 10-11.  ASR's arguments misstate and overstate the plausibility requirement that the U.S. Supreme Court set forth in *Twombly* and *Iqbal*.  Rule 8 does not require Plaintiff to plead facts showing a *probability* of success (*see Iqbal*, 556 U.S. at 678; *Keiler*, 751 F.3d at 71); instead, Plaintiff only needs to allege enough facts to raise a right to relief above the speculative level (*see Twombly*, 550 U.S. at 555-56).  And, Plaintiff may plead on information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*

---

[3] Similarly, ASR argues in a footnote that the FAC does not allege "how the supposed adulteration of the products occurred—or even information about the timing or scope of that adulteration." Mem. 11 n.9.

*Records, LLC*, 604 F.3d at 120; *Physicians Healthsource, Inc.*, 847 F.3d at 96-97. The Court should follow Supreme Court and Second Circuit authority and reject ASR's attempt to impose a pleading standard that is more onerous than the simple and plain statement of the claim that Rule 8 requires. First, Plaintiff has sufficiently identified the adulterant: other sweeteners, such as HFCS, as indicated by the presence of isolmaltose in the Products. ¶¶ 4, 20-24. Second, Plaintiff has satisfied Rule 8 without making a connection between Mexican agave manufacturers or identifying the level of adulteration by alleging the Products were tested and by alleging the tests showed the presence of isomaltose, which indicates adulteration. ¶¶ 4, 20-24. Third, how and when the Products became adulterated are "peculiarly within the possession and control of [ASR],"[4] meaning Plaintiff need not provide detailed factual allegations on these points to satisfy Rule 8. *Arista Records, LLC*, 604 F.3d at 120-21.

ASR also argues Plaintiff's claims are not plausible because she has not alleged which of the Products were tested, including whether the tests were conducted on the actual Product Plaintiff purchased; when the tests were conducted; and how many of the Products were tested. Mem. 11. ASR again misstates and overstates the requirements of Rule 8. As discussed above, the FAC is not based merely on speculation, and accepting the FAC's allegations as true and drawing all reasonable inferences in Plaintiff's favor (*see Galper*, 802 F.3d at 443), Plaintiff has more than plausibly alleged the Products are adulterated. *See supra*; ¶¶ 4, 20-24. Rule 8 does not require Plaintiff to disclose the details of her Product testing, or of Eurofins' Product testing, at this stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56; *Keiler*, 751 F.3d at 71.

ASR also argues it is impossible to determine what harm consumers suffered by purchasing

---

[4] For example, as ASR acknowledges, Plaintiff does not currently know who the manufacturer of the Products is. Mem. 5.

the Products because Plaintiff has not alleged whether the additional sweetener in the Products has a lower glycemic index or fewer health benefits than agave syrup. Mem. 12. This argument misstates Plaintiff's allegations of injury. Plaintiff alleges she and other consumers were injured when they paid an inflated, premium price for the Products on account of ASR's deceptive representations that the Products contained only one ingredient, "Agave Nectar," when in fact the Products were adulterated with other sweeteners. ¶¶ 5, 8, 10, 19, 25, 33-34, 36-39, 41, 47-48, 51, 55-59. Plaintiff's injury does not result from the lack of health benefits of the other sweeteners.[5]

ASR further contends that "if plaintiff's testing does not demonstrate that the presence of isomaltose was necessarily due to an adulterant—rather than a mere normal byproduct of the agave syrup manufacturing process—then there is no basis whatsoever for plaintiff's allegations of deception." Mem. 12. Plaintiff's allegations indicate the presence of isomaltose in the Products is due to adulteration. Plaintiff alleges isomaltose "serves as a marker for the presence of adulteration in agave syrups." ¶¶ 24, 24 n.5. Again, the Court should credit this non-conclusory allegation at this stage of the case and consider it in the light most favorable to Plaintiff. *See Galper*, 802 F.3d at 443.

Finally, ASR argues that "plaintiff's complaint leaves ASR guessing about which of the products, at what times, and in what quantities, were supposedly adulterated with some substance that plaintiff has not identified." Mem. 12. The FAC, however, identifies ASR's "Domino," "C&H," and "Florida Crystals" brand "Blue Agave Nectar" products as the Products at issue (¶

---

[5] ASR cites *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014), but that case is inapposite. In *Tomasino*, the plaintiff pointed to no evidence that could discredit the defendant's statements about the products at issue. *Tomasino*, 44 F. Supp. 3d at 258. Here, Plaintiff has pointed to testing that shows ASR's claims that the Products contain only "Agave Nectar" are affirmatively false because they contain additional sweeteners. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 460 (E.D.N.Y. 2013).

1), and it alleges that ASR made the misrepresentations and omissions at issue "continuously at every point of purchase and consumption throughout the liability period" (¶ 62), which reasonably implies that the Products were adulterated throughout the liability period.  Plaintiff has identified the additional substance in the Products as isomaltose, which indicates the presence of another sweetener. *See, e.g.*, ¶¶ 4, 20-24.  And, Plaintiff does not need to allege what quantities of the Products were adulterated for her claims to be plausible, especially since the quantity of the Product that has been adulterated is peculiarly within ASR's possession and control. *Arista Records, LLC*, 604 F.3d at 120-21.

For all of the foregoing reasons, the FAC is plausible.

### B.    Plaintiff Has Standing Under Article III Of The U.S. Constitution

ASR argues Plaintiff does not have Article III standing because she has not alleged she was affected in a personal way or that she has suffered an injury. Mem. 11–12.  In support, ASR argues Plaintiff has not alleged she tested the specific Product she purchased or alleged enough facts to give rise to the reasonable inference that all Products ASR distributed at the time of Plaintiff's purchase were adulterated. *Id.*  ASR is wrong.

Article III requires Plaintiff to show (1) she has suffered an injury-in-fact, (2) traceability, and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *accord John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord John*, 858 F.3d at 736, 737.  The injury-in-fact requirement imposes "a low threshold." *John*, 858 F.3d at 736; *accord Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Injury-in-fact is not Mount Everest.").

"When the defendant asserts a 'facial' challenge to standing, . . . it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and 'are to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."'" *John*, 858 F.3d at 737 (vacating district court opinion and remanding).

Plaintiff has sufficiently alleged she suffered an injury-in-fact because she alleges she purchased C&H Agave at a premium price from Amazon.com in 2017 in reliance on ASR's deceptive representations that the Product only contained agave syrup, when in fact it contained other sweeteners. ¶¶ 5, 8, 10, 19, 25, 33-34, 36-39, 41, 47-48, 51, 55-59; *Hughes*, 930 F. Supp. 2d at 453-55.

While the FAC does not allege Plaintiff had the specific Product she purchased tested, Plaintiff does allege Eurofins "has been analyzing commercial agave syrups for several years and has found a high level of nonconforming materials." ¶ 21.  Moreover, Plaintiff alleges that "[i]n the majority of products tested, Eurofins found that the Products had been adulterated due to the presence of maltose and isomaltose in the samples." *Id.*; *see also* ¶ 23.  The Court should accept these allegations as true and draw the reasonable inference that all of the Products that ASR sold during the applicable liability period were adulterated. *John*, 858 F.3d at 737 ("[A] facial attack on the pleadings is not the proper stage to determine whether the [investigating entity's] sampling methods justified its declaration of widespread overcharging. ***At the pleading stage, [Plaintiff] need not prove the accuracy of the [the investigating entity's] findings or the rigor of its methodology***; he need only generally allege facts that, accepted as true, make his alleged injury plausible." (emphasis added)).[6]

---

[6] ASR relies on *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010), in support of its Article III standing argument. Mem. 12.  *Waldman*, however, makes no mention of standing. *See generally Waldman*, 714 F. Supp. 2d at 398-406.

For the reasons given above, the Court should reject ASR's standing argument.

### III.   The FAC Satisfies Federal Rule Of Civil Procedure 9(b)

Plaintiff alleges a claim for fraud under Florida common law on behalf of herself and the Nationwide Class.[7] ¶¶ 117-25, p. 24 (heading for Count IV asserts claim on behalf of "Plaintiff and the Nationwide Classes").  ASR argues Plaintiff's fraud claim does not comply with Federal Rule of Civil Procedure 9(b).[8] Mem. 13-15.  The Court should reject ASR's arguments.

Under Rule 9(b):

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b).  Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015); *accord United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) ("*Chorches*"); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 65 (E.D.N.Y. 2017).  "[T]he point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further

---

[7] ASR correctly points out that paragraph 118 of the FAC refers to a "Florida" class, even though the FAC does not define a Florida class.  The reference to a "Florida" class is a typographical error.

[8] ASR also refers to "a choice-of-law question," but it does not identify such a question or explain why it contends dismissal would be warranted on choice-of-law grounds. Mem. 13. "[I]t is the movant's burden to show why dismissal is warranted on a 12(b)(6) motion . . . ." *Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 786 (W.D.N.Y. 2017); *see also Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639-LTS, 2015 WL 4040882, at *7 (S.D.N.Y. July 2, 2015) ("[I]t is not the role of this Court to divine . . . arguments [for dismissal] on behalf of the Moving Defendants.").  ASR has failed to carry its burden to identify reasons for dismissal on choice-of-law grounds, and the Court should not dismiss any part of the FAC on these grounds.

judicial process." *Chorches*, 865 F.3d at 87.

"Despite the generally rigid requirement [of Rule 9(b)], allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Chorches*, 865 F.3d at 81-82; *accord DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Eagle One Roofing Contractors, Inc. v. Acquafredda*, No. 16-CV-3537-NGG, 2018 WL 1701939, at *9 (E.D.N.Y. Mar. 31, 2018). "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." *Chorches*, 865 F.3d at 82. "'Where pleading is permitted on information and belief' in a complaint that alleges fraud (and is therefore subject to Rule 9(b)), [the Second Circuit] require[s] that the complaint 'adduce specific facts supporting a strong inference of fraud.'" *Id.*; *accord Eagle One Roofing Contractors, Inc.*, 2018 WL 1701939, at *9.

Furthermore, "while the 'actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.'" *Eagle One Roofing Contractors, Inc.*, 2018 WL 1701939, at *9; *accord Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985). "This is so because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" *Eagle One Roofing Contractors, Inc.*, 2018 WL 1701939, at *9.

Plaintiff's fraud claim satisfies Rule 9(b). The "who" is ASR. ¶¶ 1, 60. The "what" is the representation that the Products are "Blue Agave Nectar" and nothing else, as well as the failure to disclose the presence of other sweeteners. ¶¶ 1-3, 5-8, 15, 25, 38, 49, 61. The "when" is throughout the applicable liability period, which is determined by the statutes of limitations for the causes of action and will be addressed at class certification. ¶¶ 62, 66, 68. The "where" is on each

package for the Products, and Plaintiff has included a picture of the packaging in the FAC. ¶¶ 1, 52, 63. The "how" or "why" is the Products contained more than "Blue Agave Nectar" because they contained other sweeteners, as testing by Plaintiff and Eurofins revealed. ¶¶ 4-8, 10, 15, 19-25, 33, 39, 51, 64-65.

No more detail is necessary at this stage. *See Greene*, 262 F. Supp. 3d at 65-67; *Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG, 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015); *Hughes*, 930 F. Supp. 2d at 471-74.

ASR argues "plaintiff does not allege *any* facts suggesting ASR had any knowledge that the products were being adulterated, much less 'facts that give rise to a strong inference of fraudulent intent.'" Mem. 14. Plaintiff, however, "realistically cannot be expected to plead a [ASR's] actual state of mind" (*Eagle One Roofing Contractors, Inc.*, 2018 WL 1701939, at *9), especially since the facts related to whether and when ASR learned the Products were adulterated are "peculiarly within [ASR's] knowledge" (*Chorches*, 865 F.3d at 81-82).

And contrary to ASR's argument, Plaintiff has alleged facts that give rise to a strong inference of fraudulent intent. Plaintiff alleges both she and Eurofins tested the Products and found isolmaltose in them, which indicates the Products are adulterated with other sweeteners. ¶¶ 4, 20-24. Furthermore, Plaintiff alleges ASR has a financial incentive to engage in "extension" of its agave syrup Products by blending them with cheaper sugar sources because the price of the raw material for agave syrup has risen sharply, which has increased the cost of manufacturing. ¶¶ 16-19. These facts give rise to the reasonable inference that ASR intentionally adulterated the Products to save money and protect profits. *See Goldman*, 754 F.2d at 1070 (allegations that explained how defendants benefitted from inflated stock price were sufficient to meet Rule 9(b));

*see also Hughes*, 930 F. Supp. 2d at 473.[9]

ASR also argues Plaintiff's fraud claim does not meet Rule 9(b) because the FAC does not specify when ASR learned about the adulteration of the Products and/or decided to mislabel the Products, instead alleging that the fraud occurred "continuously at every point of purchase and consumption throughout the liability period." Mem. 14.  Plaintiff has addressed ASR's arguments concerning its knowledge and intent above. *See supra* Section II.A.  Additionally, Plaintiff has sufficiently pled the "when" of the fraud by alleging that it took place continuously at every point of sale during the liability period. ¶¶ 62, 66, 68; *see In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) (holding in deceptive product labeling case that "the relevant 'when' is either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010).

Finally, ASR argues Plaintiff has not specified who committed the fraud at issue because Plaintiff alleges, in part, that she is unaware of the true names and identities of those individuals at ASR who are responsible for ASR's material representations and omissions. Mem. 14-15.  ASR seeks to hold Plaintiff to a higher standard than Rule 9(b) imposes. *See Chorches*, 865 F.3d at 88 ("[Rule [9(b)] demands specificity, but . . . it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility.").  Under Rule 9(b), Plaintiff need

---

[9] In a footnote, ASR cites *In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413 RRM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ("*Frito-Lay*"), for the proposition that "a court a court cannot infer from allegations showing that the wrong-doer made more money a motive and opportunity to commit fraud." Mem. 14 n.11 (quoting *id.* at *25).  *Frito-Lay*, however, is distinguishable because Plaintiff's allegations do not merely "pertain to virtually any company that manufactures and distributes goods." *See Frito-Lay*, 2013 WL 4647512, at *25.  Rather, they explain how ASR, specifically, benefitted from the conduct at issue, i.e., it was able to protect its profits from the increase in manufacturing costs due to the sharp rise in cost of the raw materials for agave syrup. ¶¶ 16-19; *see Goldman*, 754 F.2d at 1070; *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994) (discussing *Goldman*).

not identify both ASR and the individuals within ASR who are responsible for the fraud to satisfy Rule 9(b)'s requirement that she identify "who" committed the fraud. *See, e.g.*, *Greene*, 262 F. Supp. 3d at 66; *Paulino*, 2015 WL 4895234, at *7.  Plaintiff's identification of ASR as the responsible entity is enough.

For all the foregoing reasons, the FAC satisfies Rule 9(b), and the Court should reject ASR's arguments to the contrary.

## IV.   Plaintiff Has Standing To Represent Class Members From Other States And This Court Has Jurisdiction Over Those Claims

### A.   Whether Plaintiff Can Represent Out Of State Residents Is An Issue For Class Certification And Is Not Appropriate For Resolution At The Pleading Stage

Defendant contends that Plaintiff cannot pursue claims for proposed class members under the laws of states in which she does not reside. Mem. 15.  While Defendant couches this as a standing issue, in reality, Defendant is seeking to prematurely challenge class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case").  In other words, "[a]pplication of choice-of-law principles has nothing to do with standing." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

The Second Circuit recently addressed this very issue and held that since the analysis for class standing significantly overlaps the typicality, commonality, and adequacy requirements under Rule 23, courts have held it is appropriate to wait until class certification to evaluate class standing. *Langan v. Johnson & Johnson Consumer Cos.*, 2018 U.S. App. LEXIS 20592, *12-13 (2d Cir. July 24, 2018).  The facts in *Langan* were very similar to those here.  Plaintiff, a Connecticut consumer, challenged Johnson & Johnson's "natural" labeling on its baby products and brought causes of action on behalf of a national class under the laws of twenty other states.

Johnson & Johnson moved to dismissed plaintiff's claims under state laws other than Connecticut, arguing that the plaintiff did not have standing to bring claims on behalf of consumers in states other than Connecticut.  The Second Circuit rejected that argument, holding that "this is an issue best addressed under Rule 23, rather than as a standing issue." *Id.* at * 12. The Court reasoned that "[s]ince class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Id* at *13-14.

This holding built upon the Court's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), is controlling.  In that case, the Second Circuit held that "to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied . . . ." *Id.* at 159.  After standing is established, "the inquiry shift[s] to a class action analysis." *Id.*; *see also, Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (discussing *NECA-IBEW* and stating that "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant"); *see also Sitt v. Nature's Bounty,* Inc., No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, *3 (E.D.N.Y. Sept. 26, 2016) ("Thus, because Plaintiff has standing to assert a claim directly against each of the named Defendants, Plaintiff has satisfied the Article III standing requirement for class actions . . . based on the Second Circuit's clear pronouncement of Article III standing in *NECA-IBEW*, Plaintiff has

no further burden to demonstrate Article III standing. Plaintiff has sufficiently stated a cognizable injury by Defendants and has therefore established Article III standing.").  Thus, because Plaintiff has stated a cognizable injury by Defendants, the payment of a price premium for Defendant's falsely labeled Product, she has satisfied Article III standing.

The Second Circuit's determination also followed a long line of district court decisions holding that standing to pursue claims on behalf of out-of-state plaintiffs in a class case must wait until the certification stage. *See, e.g., Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) ("The weight of authority views this issue under the lens of typicality or adequacy of representation, rather than standing.") (internal quotations omitted); *Kaatz v. Hyland's Inc.*, No. 16 CV 237 (VB), 2016 U.S. Dist. LEXIS 87348, *11 (S.D.N.Y. July 5, 2016) ("Here, it is appropriate to defer a resolution of plaintiffs' standing until the class certification stage because class certification issues are the source of any potential standing problems"); *Fort Worth Empls. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 333 (S.D.N.Y. 2012) ("It is also important not to collapse the standing inquiry into the class certification inquiry. Courts in this District have long made clear that 'the Article III standing determination should precede that of class certification.'") (quoting *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 605 (S.D.N.Y. 2006); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-377 (E.D.N.Y. 2010) ("Under the guise of standing, defendant has raised the issues of adequacy of the representatives and whether there are common questions of law or fact that predominate over any questions affecting only individual members . . .  These are issues to be addressed at the class certification stage.") (quoting *Ramirez v. Dollar Phone Corp.*, No. 09-CV-2290, 2009 U.S. Dist. LEXIS 92972 (E.D.N.Y. Oct. 1, 2009)).

**B.    This Court Has Specific Personal Jurisdiction Over The Claims Of Non-Resident Class Members**

Defendant argues that this Court lacks specific personal jurisdiction[10] over it for the claims of non-New York residents.  The U.S. Supreme Court addressed this issue in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco* in the context of mass torts in state court, but left the jurisdictional issue open with respect to class actions (*Bristol-Myers Squibb Co.*, 137 S. Ct. at 1789 n.4 (Sotomayor, J. dissenting)) and with respect to federal court as opposed to state court (*id.* at 1783-84).

Since *Bristol-Myers*, most courts have held that its limitations on state court jurisdiction over the mass tort claims of nonresidents do not apply to class actions. *See In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 30, 2017); *Sloan v. General Motors, LLC*., No. 16-cv-07244, 287 F. Supp. 3d 840, 861 (C.D. Cal. Feb. 7, 2018) (citing *Chinese Drywall* and concluding that *Bristol-Myers* does not apply to federal class actions); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*, No. 17-2161, 2018 U.S. Dist. LEXIS 43974 *13 (E.D. La. Mar. 19, 2018) (citing *Chinese Drywall* and concluding that "The court finds that the material differences between mass tort actions and class actions further support the finding that *Bristol-Myers* is inapplicable to the instant case, a purported class action invoking federal question subject matter jurisdiction."); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 6:17-cv-1734, 2018 U.S. Dist. LEXIS 79578 * 15 (M.D. Fla. Apr. 4, 2018) (citing *Chinese Drywall* and declining to apply *Bristol-Myers* in the class-action context); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017) (holding that *Bristol-Myers* did not change the law with regard to personal jurisdiction over named plaintiffs and noting that *Bristol-Myers* was a state mass tort rather than a federal class action); *Day v. Air Methods Corp*., No. 17-cv-183, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017) (declining to extend *Bristol-Myers* to a wage and hour class action suit

---

[10] Plaintiff does not argue that the Court has general jurisdiction over Defendant.

because "the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members."); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564, 2017 U.S. Dist. LEXIS 155654, * 15 (N.D. Cal. Sep. 22, 2017) ("[T]he Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.").

First, with respect to class actions, the key to the *Chinese Drywall* court's analysis, which was adopted by the other courts, was its examination of the two major differences between mass torts and class actions. The court noted that "[i]n a mass tort action, like the one in [*Bristol-Myers*], each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints. A class action, on the other hand, generally involves one or more plaintiffs who seek to represent the rest of the similarly situated plaintiffs." *Chinese Drywall*, 2017 U.S. Dist. LEXIS 197612, at *37. Further, the court noted that class actions are subject to additional due process safeguards which mass torts are not, namely the rigorous requirements for certification under Rule 23. *Id.*

With respect to application in federal court, since the Supreme Court expressly "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" (*Bristol-Myers*, 137 S. Ct. at 1783-84), courts have hesitated to apply the reasoning of *Bristol-Myers* to federal court because the concerns about state sovereignty which animated *Bristol-Myers* are not present in federal court. As the Supreme Court explained, "restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotations omitted).

Such federalism concerns are inapplicable in state court. *See, e.g., Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) ("a federal court sits as a unit of the national

government and, therefore, the territorial limitations that apply to the exercise of state court jurisdiction…are inapposite."); *Mut. Int'l Exp. Co. v. Napco Indus., Inc.*, 316 F.2d 393, 395 n.8 (D.C. Cir. 1963) ("Constitutionally, federal courts, because of their national character, are not inhibited in exercising their jurisdiction by state territorial limitations.") (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). Courts have declined to extend *Bristol-Myers* to federal cases based on this distinction. *See Chinese Drywall*, 2017 U.S. Dist. LEXIS 197612, *55-56 ("In this case, federalism concerns do not apply. BMS is about limiting a state court's jurisdiction when it tried to reach out-of-state defendants on behalf of out-of-state plaintiffs in a mass action suit. That scenario is inapplicable to nationwide class actions in federal court . . ."); *Sloan*, 287 F. Supp. at 858 ("In contrast to *Bristol-Myers*, the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government."). Accordingly, this Court has personal jurisdiction over Defendant for the claims of consumers outside New York.

Defendant cites a several decisions which extended *Bristol-Myers* to federal class actions. Mem. 16-17. As noted above, however, these cases represent the minority and are contrary to the weight of authority. Moreover, the cases cited by Defendant did not engage in an analysis of the differences between class actions and mass torts, and thus provide no substantive authority to support Defendant's motion. The court in *Spratley v. FCA US LLC*, No. 3:17-cv-0062, 2017 LEXIS 147492 (N.D.N.Y. Sept. 12, 2017), for example, simply stated: "Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and [defendant's] contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims." *Id* at *19. Indeed, other courts have specifically declined to follow *Spratley* on the grounds that it failed to distinguish between state mass torts and federal class actions. *See, e.g.,*

*Sanchez v. Launch Tech. Workforce Sols, LLC*, No. 1:17-cv-1904-ELR, 2018 U.S. Dist. LEXIS 28907, *15 n.9 (N.D. Ga. Jan. 26, 2018) (declining to follow *Spratley* because it "presume[es] that Bristol-Myers requires dismissal of non-residents class members' claims without explaining why Bristol-Myers would apply in a class-action suit"). Similarly, *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165-PHX, 2017 U.S. Dist. LEXIS 162812 (D. Ariz. Oct. 2, 2017) assumed, without analysis, that no certification of national class was possible under *Bristol-Myers*.

In contrast, the recently decided *Sloan* thoroughly examined the issue. That case was a class action brought against General Motors in the Northern District of California by Plaintiffs who purchased defendant's vehicles in 28 different states. *See generally Sloan*, 287 F. Supp. 3d 840. Defendant argued that *Bristol-Myers* required dismissal for lack of personal jurisdiction of all claims by non-California named plaintiffs who did not purchase their cars in California. The court rejected that argument, holding that that *Bristol-Myers* does not apply to federal courts, and went on to analyze personal jurisdiction over the claims of out-of-state class members under the traditional due process framework. *Id* at 858. Under that analysis, the court found that it could exercise personal jurisdiction over the out-of-state plaintiffs because 1) GM had availed itself of the privilege of conducting business in California; 2) the claims of the out-of-state plaintiffs had a sufficient nexus to the claims of the California plaintiffs; 3) in class action lawsuits the court has jurisdiction over absent class members who are non-forum residents; 4) the exercise of personal jurisdiction over the non-resident plaintiffs' claims in this case will impose only a *de minimis* burden on GM; and 5) if the Court were to decline to exercise jurisdiction, GM would face piecemeal litigation and would have to defend itself in several different courts on nearly identical issue. *Id* at 862.

**C.**   **Plaintiff's Claims Under The Consumer Protection Laws Of States Other Than New York Are Well-Pled And Should Not Be Stricken**

Defendant next asks the Court, at the pleadings stage, to dismiss Plaintiff's claims under the consumer protection laws of states other than New York. Mem. 17.  These claims, however, are pled with sufficient detail and meet the requirements of FRCP 9(b). *See supra* Section III. Moreover, Defendant's contention that the claims must be stricken based on differences between the state laws is premature, and should be rejected.

Defendant contends that that the FAC "merely contains a list of the consumer protection laws of 40 states (and the District of Columbia)". Mem. 17.  This is incorrect.  The FAC provides a detailed explanation of how Defendant made the material representation that the Product is are unadulterated and contains agave nectar as the sole ingredient when it does not, and in reliance upon this representation, Plaintiff and the putative class members paid a premium price for the Products. ¶¶ 111-113.  The factual detail provided by Plaintiff is in stark contrast to *In re Trilegiant Corp.*, 11 F. Supp. 3d 82 (D. Conn. 2014), cited by Defendant.  In that case, the plaintiffs, in a footnote in their complaint, "merely list[ed] several other states' consumer protection statutes without explaining how those statutes relate[d] to the Defendants' alleged conduct in [the] case." *Id.* at 124.  Moreover, as noted in *supra* Section III, Plaintiff has sufficiently pled each of the elements required under FRCP 9(b) (the "who," "what," "when," "where," and "how" of Defendant's deception).  Thus, the claims which require such heightened pleading should not be dismissed.

Defendant also asks the Court to dismiss Plaintiff's claims under the consumer protection laws of states other than New York based on the "material differences" between the laws. Mem. 18.  While not identified as such, Defendant's motion is, in essence, a motion to strike Plaintiff's national class allegations pursuant to FRCP R. 12(f).  However, Defendant cannot meet the

extraordinarily high burden associated with seeking to strike class allegations at the pleadings stage.  When a defendant makes a motion to strike class allegations before class discovery has been concluded (let alone started), the defendant bears the burden to "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y 2015) (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)).

Here, defendants haven't merely moved to dismiss the nationwide class allegations before discovery has been held; they have moved to dismiss the nationwide class allegations before they have even answered the FAC.  There are numerous decisions in this circuit noting that motions to strike are disfavored, and should be granted "only when there is a strong reason for doing so." *In re Tronox Sec. Litig.*, No. 09 Civ. 6220, 2010 U.S. Dist. LEXIS 67664, at *13 (SDNY June 28, 2010).  Moreover, "[a] motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chenensky v. NY Life Ins. Co*., 2011 WL 1795305, at *4 (S.D.N.Y Apr. 27, 2011) (quoting *Ironforge.com v. Paychex, Inc*., 747 F.Supp.2d 384, 404 (W.D.N.Y 2010)).  Thus, unless a motion to strike class allegations "addresses issues separate and apart from the issues that will be decided on a class certification motion," the motion should be denied as premature. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113, 117 (SDNY 2012).  Here, defendants' motion to strike the plaintiff's nationwide class allegations is premature and should be decided within the context of a certification motion.

*In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) ("*Grand Theft Auto*"), which Defendant cites (Mem. 18), is inapposite. *Grand Theft Auto* involved a motion to decertify the class. And as explained by *Ersler v. Toshiba Am., Inc.*, 2009 U.S. Dist. LEXIS 14374, *14 (E.D.N.Y. Feb. 24, 2009), *Grand Theft Auto* "focused on the differences in state consumer protection statutes with respect to the element of reliance, but the questions of reliance that concerned the court in Video Game [were unique]." As described in detail in the [*Grand Theft Auto*] decision, the alleged misrepresentation in that case impacted class members in a variety of very different ways.[11]

Similarly, Defendant's reliance upon *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), is misplaced. Mem. 18. In the *Mazza* case, the Ninth Circuit reversed the district court's certification of a nationwide class based on its finding that California's choice of law rules, applied specifically to the facts at issue, mandated application of the laws of the states in which the purchases occurred. However, **the district court made its ruling at the class certification stage** after an extensive record was created, and the Ninth Circuit took care to limit its reversal to "the facts and circumstances of this case." *Id*. at 594. The Court also explicitly left open the possibility of considering subclasses "with different jury instructions for materially different bodies of state law." Accordingly, "[u]ntil the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case." *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1159 (C.D. Cal.

---

[11] "Likewise, in the instant case, members of the Settlement Class may have purchased GTA:SA for any number of reasons other than its "M" rating, including because they hoped the game would contain sex, violence, and other controversial content in abundance. Indeed, the defendants introduced expert evidence tending to show that an overwhelming majority--perhaps as many three-quarters--of GTA:SA purchasers did not consider the game's content rating at the time they made their purchase." *Grand Theft Auto*, 251 F.R.D. at 155.

2012).

For these reasons, courts do not apply *Mazza*'s fact-specific class certification ruling to allegations at the pleading stage. *See Fonseca v. Goya Foods, Inc.*, No. 16-civ-02559, 2016 U.S. Dist. LEXIS 121716, at *8 (N.D. Cal. Sept. 8, 2016) ("This Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations."); *Werdebaugh v. Blue Diamonds Growers*, No. 12-civ-02724, 2013 U.S. Dist. LEXIS 144178 at *56 n.9 (N.D. Cal. Oct. 2, 2013) (stating that "[t]his conclusion accords with  the Court's conclusion in [Brazil], as well as the conclusions of numerous other courts within the Ninth Circuit, which have declined, even after *Mazza*, to conduct the choice of law analysis at the pleading stage", and citing cases); *Forcellati* at 1159 ("Courts rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation.").

Here, plaintiffs' complaint is well pled and there is no basis for striking the nationwide class allegations at the pleadings stage.  Notably, in *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 263 (E.D.N.Y. 2009) (emphasis added), the district court stated:

> . . . while some of the class members accepted PayPal's User Agreement in New York, most of them accepted it in another state.  ***The plaintiffs might have overcome this hurdle by alleging violations of the deceptive trade practice statutes of various states*** (in addition to § 349) in the Complaint, but they failed to do so. *Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 97-98 (E.D.N.Y 2008) ("potential variations among state consumer protection statutes do not preclude certification .... even if a substantial variation ... were to arise, the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable") (internal citations omitted).

With respect to each of the state consumer protection and express warranty claims, the allegations in the complaint assert viable claims.  It is nonetheless urged by Defendant that there should not be nationwide class certification in this case because of variations among the state laws. However, as noted in *Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395 (S.D.N.Y. 2014) variations in the laws of the different states do not preclude class certification, and certainly do not

justify striking nationwide class allegations at the pleadings stage. ("the Court finds that while some variation exists among states in the common law of fraud and negligent misrepresentation, when applied to the facts of this particular case any such variation is unlikely to lead to actual variation in adjudication of liability.").  Defendants have not demonstrated, from the face of the complaint, that it would be impossible for plaintiffs to make the requisite showing to support class certification.  Rather, Defendant's argument broadly concludes, without offering any analysis of the state laws at issue, that the consumer protection statutes are materially different from one another.

Because Defendant has not met the high burden for striking Plaintiff's non-New York allegations, these claims should not be dismissed.

## V.      Plaintiff's Unjust Enrichment Claim Is Well-Pled and Is Not Duplicative of The Other Causes Of Action

The basic elements of an unjust enrichment claim in New York, which are properly pled in the Amended Complaint, are that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. N.Y. 2004). Defendant does not dispute that Plaintiff has pled and factually supported these elements.  Rather, Defendant argues Plaintiff's claim must be dismissed because it is duplicative.  As set forth in *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397 (S.D.N.Y. 2010), it is inappropriate at the motion to dismiss phase to issue a ruling as to whether an unjust enrichment claim is duplicative because that question may be answered through discovery.  Under Rule 8(d)(2), "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).  Because Plaintiffs may plead their unjust enrichment claims in the alternative to their other claims, and questions of fact remain as to

all of Plaintiffs' claims, the Court should decline to dismiss Plaintiffs' unjust enrichment claim.

Indeed, the Eastern District of New York sustained nearly identical unjust enrichment claims in

*Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. Jul. 17,

2013), and in *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701

F. Supp. 2d 356 (E.D.N.Y. 2010) ("*In re Bayer*"), where it held:

> [P]laintiffs charge defendant with employing misleading statements about the
> virtues of the combination product to market them to consumers.  Because of these
> misrepresentations, plaintiffs purchased the combination products and defendant
> retained those benefits.  If the allegations in the Complaint are true, then defendant
> reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim
> for unjust enrichment.

*In re Bayer*, 701 F. Supp. 2d at 384.  Here, a plain reading of the Amended Complaint reveals that

each of the elements necessary to sustain an unjust enrichment action has been pled.

## VI.    Plaintiff Has Standing To Seek Injunctive Relief

There is a split of authority in the Second Circuit on whether a plaintiff in a consumer class

action has standing to seek injunctive relief to correct misleading product labels and

representations.  Some courts reason that since the plaintiff knows about the misrepresentations,

he or she is in no danger of being deceived in the future and lacks standing.  *See Kommer v. Bayer*

*Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) ("[A]bsent contrary guidance from

the Supreme Court or the Second Circuit, precedent requires the Court to 20 conclude that Plaintiff

has no standing to seek injunctive relief."); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277

(BKS), 2016 U.S. Dist. LEXIS 14001, at *17-18 (N.D.N.Y. Jan. 15, 2016) (collecting cases);

*Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015).

Courts concluding that standing exists generally reason that the inability to rely on the

labels in the future constituted a threat of harm, or on the grounds that a contrary holding would

mean no one would ever have standing to pursue injunctive relief. *See In re Amla Litig.*, No. 16-

cv-6593, 2017 U.S. Dist. LEXIS 175950, at *40 (S.D.N.Y. Oct. 24, 2017) ("Plaintiffs cannot trust that the advertising on those products is accurate absent specific injunctions ordering defendants not to engage in false or misleading advertising and not to place products on the market without claim substantiation, or, indeed, as long as this harmful product remains on the shelves."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc*., 317 F.R.D. 374, 397-98 (S.D.N.Y. 2016) (following *Belfiore* and finding plaintiffs' statements that they would buy products again if they were properly labeled sufficient for standing); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (Weinstein, J.) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *56 ("[T]o hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

The Second Circuit has not spoken on this issue, but the Ninth Circuit recently has. Like the Second Circuit, there was a similar ("dramatic") split on the issue in the Ninth Circuit, which the court squarely addressed:

> Today, we resolve this district court split in favor of plaintiffs seeking injunctive relief. We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). The court reasoned that:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the

product although she would like to.[12]

*Id.*

That is exactly the posture in which Plaintiff finds herself with respect to Defendant's Product.  She has alleged: "If the labeling of the Product was truthful, Plaintiff would purchase the Product again in the future." ¶ 10.  Indeed, it was the absence of such an allegation that supported some Second Circuit district courts' findings that Article III standing did not exist. *See, e.g., Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417-18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"); *Nicosia* at 158 ("Plaintiff does not allege that he intends to purchase the [product] again in the future."); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[Plaintiff] demonstrated that she is, in fact, unlikely to purchase ANR products again."). Accordingly, even under the reasoning of some of the New York district courts on the "no standing" side of the Second Circuit split, Plaintiff might have been able to pursue injunctive relief.  Since many New York district courts have found standing, some of the ones which did not may have done so given Plaintiff's allegations, and the Ninth Circuit resolved its

---

[12] Although *Davidson* was decided under California law, the reasoning applies to this case. New York's GBL § 349, if anything, is broader in scope than California's Unfair Competition Law. *See James v. Penguin Grp. (USA) Inc.*, No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769, at *28 (S.D.N.Y. Apr. 11, 2014) ("New York's highest court endorsed a broad reading of the GBL § 349.... It stated that GBL § 349 "on [its] face appl[ies] to virtually all economic activity[] and [its] application has been correspondingly broad.") (quoting *Karlin v. IVF America, Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999); *id.* at *17 ("The UCL is a broad statute that prohibits business practices that constitute "unfair competition" which is defined as an unlawful, unfair, or fraudulent act, as well as an act of false advertising.").

intra Circuit split clearly in favor of finding standing, the weight of authority favors Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should deny ASR's motion to dismiss in its entirety.

Date: July 30, 2018

Respectfully submitted,

By: _____ */s/ Melissa S. Weiner* _____

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner
*mweiner@pswlaw.com*
800 La Salle Avenue
Suite 2150
Minneapolis, Minnesota  55402
Telephone: (612) 389-0601
Facsimile: (612) 389-0610

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**THE SULTZER LAW GROUP PC**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari
*liparij@thesultzerlawgroup.com*
Adam Gonnelli
*gonnellia@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

*Counsel for Plaintiff and the Proposed Class*