UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TERESA VALDES, individually and on behalf
of all others similar situated,

       Plaintiff,

  -against-

AMERICAN SUGAR REFINING, INC.,

       Defendant.

--------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 29 2019 ★

**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-5213 (CBA) (PK)

**AMON, United States District Judge:**

 Plaintiff Teresa Valdes brings this proposed class action against Defendant American Sugar Refining, Inc. ("ASR"). Valdes alleges that ASR has conducted misleading and deceptive labeling, marketing and advertising practices with respect to its "Blue Agave Nectar" products, because although the ingredient list on the products' packaging states that "Organic Blue Agave Nectar Syrup" is the sole ingredient, testing indicates that other synthetic substances are present. Valdes alleges that based on this material omission, she paid a premium for what she believed to be unadulterated agave nectar, but in fact received adulterated nectar that was of a lesser value. She brings a variety of state statutory and common law claims on behalf of herself and all similarly situated class members nationwide, including that ASR violated the consumer protection statutes of New York and forty other states. Before the Court is ASR's motion to dismiss Valdes' First Amended Complaint ("FAC") (D.E. # 22), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, ASR's motion is granted in part and denied in part.

# BACKGROUND

## A. Factual Background

ASR is a company organized under the laws of the state of Delaware whose principal place of business is in West Palm Beach, Florida. According to the FAC, ASR distributes "Blue Agave Nectar," a "liquid sweetener," for sale under the brand names "Domino," "C&H," and "Florida Crystals" (the "Products" or "ASR's Products"). (FAC ¶ 1.) The ingredient list for each Product states that "Organic Blue Agave Nectar Syrup" is its sole ingredient. (FAC ¶¶ 1,2.) The Products also display the United States Department of Agriculture ("USDA") "Organic" label that signifies that it was certified as organic. (Id.)

Valdes alleges that she has conducted testing on the Products and has found "the presence of isomaltose markers in them." (FAC ¶ 4.) Isomaltose "is not naturally found in pure agave syrup," but instead is present "in a variety of sweeteners, including [High Fructose Corn Syrup], and thus serves as a marker for the presence of adulteration in agave syrups." (FAC ¶¶ 4, 24.) The FAC also states that to comply with Norma Oficial Mexicana ("NORMA"), a Mexican quality assurance specification for agave syrup, blue agave syrup "cannot contain isomaltose, which has been identified by NORMA as an unnatural component of blue agave syrup." (FAC ¶ 20.) The FAC cites a scientific study conducted by Eurofins Scientific, "a highly regarded, accredited and independent product testing laboratory." (FAC ¶ 21.) Eurofins has analyzed commercial agave syrups "for several years," and has found "a high level of nonconforming material." (Id.) "In the majority of products tested," Eurofins has found presence of isomaltose. (Id.) Because isomaltose "is not naturally found in pure agave syrup," Valdes alleges "upon information and belief [that ASR's] products are adulterated with other sweeteners not disclosed on the ingredients list." (FAC ¶ 4.) She believes ASR has engaged in "extension," which is the blending of agave syrup with

2

cheaper sugar sources, in order to counteract the "sharp rise in price for [] agave pina, the raw material for agave syrup." (FAC ¶ 15.)

Valdes contends that because the ingredient list states that the sole ingredient in ASR's Products is "Organic Blue Agave Nectar Syrup," it is false and misleading to the reasonable consumer. (FAC ¶ 8.) She alleges that she purchased "C&H Agave" from Amazon.com in 2017 in reliance on ASR's representation that it contained "only agave syrup." (FAC ¶ 10.) Valdes "would not have purchased the product had she known it was adulterated with foreign sweeteners that are not normally present in true agave syrup." (Id.) Valdes contends that she paid a "premium price" for the product and that she was "deprived the benefit of the bargain because the [product] purchased [was] different from what Defendant warranted . . . [and] had less value than what Defendant represented." (FAC ¶ 55.) She alleges that because ASR made "misleading and deceptive representations" on its ingredient list, it was "able to and did charge a premium price for [its product] over the cost of competitive products containing agave nectar without added sweeteners." (FAC ¶ 58.)

Valdes initiated this case as a proposed class action pursuant to Federal Rule of Civil Procedure 23 "on behalf of herself and all others similarly situated" both Nationwide and in the State of New York who "purchased one or more of [ASR's products]." (FAC ¶¶ 66–68.) On behalf of herself and the "New York Class Members," Valdes brings claims asserting violations of New York's Consumer Protection Statute, N.Y. GBL §§ 349 & 350. (FAC ¶¶ 87–107.) On behalf of herself and the "Nationwide Classes," Valdes brings claims asserting: (1) violations of the consumer protection statutes of forty states and the District of Columbia, (FAC ¶¶ 109–116); (2) fraud under Florida common law, (FAC ¶¶ 117–125); (3) breach of express warranty, in violation of the state warranty laws of forty-three states and the District of Columbia, (FAC

3

¶¶ 126–133); and (4) unjust enrichment, (FAC ¶¶ 134–138). Valdes seeks both monetary damages and various forms of declaratory and injunctive relief. (FAC ¶¶ 28–29.)

## B. Procedural History

Valdes' initial class action complaint was filed in September 2017.[1] (D.E. # 1.) This complaint brought state-law claims challenging the misleading and deceptive nature of ASR's Products being labeled as "organic" and featuring the "USDA Organic" label. (Id.) Specifically, it alleged that the marketing of ASR's Products as "organic is false and misleading because it is adulterated with non-natural, non-organic ingredients." (D.E. # 15.) In November 2017, ASR requested a pre-motion conference prior to moving to dismiss Valdes' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. # 12.) The Court stayed ASR's request because it determined that the identical issues that ASR sought to raise in its 12(b)(6) motion were under consideration by the Second Circuit in its then-pending case of Marentette v. Abbott Laboratories, Inc., 886 F.3d 112 (2d Cir. 2018), and that the "Second Circuit's resolution of those issues will be dispositive of defendant's proposed motion and indeed may be dispositive of this action altogether." (D.E. dated January 3, 2018.) Marentette was decided in March 2018 and held that state-law challenges alleging that a product certified by the USDA as "organic" contained non-organic ingredients are preempted by the Organic Foods Production Act ("OFPA"), 7 U.S.C. § 6501 et seq., under the doctrine of conflict preemption. 886 F.3d at 118. A pre-motion

---

[1] Although venue for this case is proper in the Southern District of New York—Valdes alleges she resides and purchased the agave nectar in the Bronx—ASR did not object to improper venue in its motion to dismiss. Any objection to venue is waived if not raised in the defendant's initial Rule 12(b) motion. See Fed. R. Civ. P. 12(h)(1)(A). "A district court may not dismiss a case sua sponte for improper venue absent extraordinary circumstances." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999). Because the court finds no extraordinary circumstances warranting sua sponte dismissal of this case for improper venue, and "in light of the significant judicial resources already expended" by the Court and the parties in relation to the instant motion, the Court declines to dismiss this case for improper venue. Joe Hand Promotions, Inc. v. Elmore, 2013 WL 2352855, at *1 n. 2 (E.D.N.Y. May 23, 2013.)

conference was held in April 2018, and Valdes was granted leave to amend her complaint, and ASR was granted leave to move to dismiss the amended complaint. (D.E. dated April 13, 2018.)

Valdes filed her FAC in May 2018, which eliminated the challenge to ASR's labeling of its Products as "organic." It instead focuses its allegations on the fact that the Products' ingredient lists are misleading and deceptive because they materially omit the presence of synthetic substances. (FAC ¶¶ 4–8.) ASR brought the instant motion to dismiss, contending that the FAC is still preempted by Marentette, and presenting arguments related to standing, personal jurisdiction, and that the FAC failed to adequately state a plausible claim for relief under 12(b)(6). (D.E. # 27.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (citing Twombly, 550 U.S. at 555, 557) (internal quotation marks omitted)). A "district court may grant a motion to dismiss based on federal preemption, if the defense can easily be determined from the pleadings." Marentette v. Abbott Laboratories, Inc., 201 F. Supp. 3d 374, 377 (E.D.N.Y. 2016).

**DISCUSSION**

I.     **OFPA Preemption**

ASR contends that despite Valdes' attempt to amend her Complaint in the wake of the Second Circuit's decision in Marentette, the claims in the FAC are still preempted by the OFPA. Prior to adjudicating the merits of ASR's position, it is necessary to discuss some of the background of the OFPA statutory scheme and the reasoning of the Marentette decision.

### A. Background of the OFPA Statutory Scheme and **Marentette**

Enacted in 1990, the OFPA directed the Secretary of Agriculture to "establish an organic certification program for producers and handlers of agricultural products that have been produced using organic methods." 7 U.S.C. § 6503(a). The Act's stated purpose is to: (1) "establish national standards governing the marketing of certain agricultural products as organically produced products"; (2) "assure consumers that organically produced products meet a consistent standard"; and (3) "facilitate interstate commerce in fresh and processed food that is organically produced." Id. § 6501.

Under the OFPA, a product may only be labeled as organic if it was "produced and handled in compliance with an organic plan agreed to by the producer and handler of such product" and a USDA accredited "certifying agent." Id. § 6504(3); Marentette, 886 F.3d at 115. The certifying plan "must list each substance to be used as an input" into the product, so that the "certifying agent can assess whether the plan complies with the OFPA." Marentette, 886 F.3d at 116. Among other requirements, the OFPA and its regulations mandate that organic products must not be produced with the use of any "synthetic ingredient" that does not appear on the Department of Agriculture's "National List" of synthetic substances that are permitted in organic products. 7 U.S.C. § 6510(a)(1). Certifying agents therefore "must consider whether any of the ingredients a producer

6

or handler intends to include are synthetic, and must deny certification if they are not included on the National List." Marentette, 886 F.3d at 116. Once the certifying agent has approved an organic plan, it performs an on-site inspection, during which it reviews all of the inputs and methods of production. Id. (citing 7 C.F.R. §§ 205.402(a)(4), 205.403). However, certifying agents "generally do not inspect or certify batches of products." Id. at 115. If the certifying agent confirms that the operation complies with the proposed organic plan, the applicant is certified and can begin selling and labeling products made under that plan as organic, subject to annual reinspection. Id. (citing 7 C.F.R. § 205.403(a)(1)).

The Second Circuit in Marentette found that a state-law challenge to a product that was certified under the OFPA process but still purportedly contained impermissible synthetic ingredients was precluded under the doctrine of conflict preemption. It reasoned that such a challenge "str[uck] at the very heart of the OFPA certification process." 886 F.3d at 118. The Circuit explained that "[t]he lack of private right of action in the statute and the complex enforcement scheme that Congress did enact, combined with the statute's explicit purposes, suggest that Congress did not want individuals to be able to challenge the merits of a decision to certify a product as organic under the OFPA." Id. at 121. It further reasoned that "[b]ecause determining whether [a plaintiff has] meritorious state-law claims requires the Court to look behind [a defendant's] certification granted pursuant to a federal scheme, those state-law claims are an obstacle to the federal scheme's objectives and are preempted." Id. at 119.

The Circuit emphasized that the only claims that are preempted are the "state law challenges to the certification decision itself," and not "state law challenges to the facts underlying certification." Id. at 118; see also In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781, 797 (8th Cir. 2010) (same); Quesada v. Herb Thyme Farms, Inc., 361 P.3d

7

868, 880 (Cal. 2015) ("When the USDA issued its final rule adopting implementing regulations [of the OFPA], it emphasized that the uniform federal standards for organic certification were designed to supplement and enhance, rather than foreclose, state law consumer remedies for deception."). It stated that a state-law claim must be "truly independent of the decision to certify" a product as organic for it not to conflict with the OFPA and escape federal preemption. Marentette, 886 F.3d at 119.

## B. Whether Valdes' Claims Are Preempted

ASR's argument sounds exclusively in conflict preemption, which refers to situations where (1) "compliance with both state and federal law is a physical impossibility," or, as relevant here, (2) "the state law at issue stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Marentette, 886 F.3d at 117 (internal citations omitted). "What constitutes a 'sufficient obstacle' is a 'matter of judgement, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" Id. (quoting In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig, 725 F.3d 65, 96 (2d Cir. 2013)).

When addressing federal preemption questions, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Wyeth v. Levine, 555 U.S. 555, 565 (2009). Federal law does not preempt state law under the obstacle branch of conflict preemption unless "the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." Marentette, 886 F.3d at 117 (quoting In re MTBE, 725 F.3d at 102). "[T]he party asserting that federal law preempts state law bears the burden of establishing preemption." Id. (internal citations omitted). "The burden of establishing obstacle preemption . . . is heavy: the mere fact of 'tension' between federal and state law is generally not enough to

establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." In re MTBE, 725 F.3d at 101–02. Such is the case here, as "States have always possessed a legitimate interest in the protection of their people against fraud and deception in the sale of food products." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 144 (1963) (internal citations omitted); see also Kosta v. Del Monte Corp., No. 12-CV-1722 (YGR), 2013 WL 2147413, at *6 (N.D. Cal. May 15, 2013) ("There is a strong presumption against federal preemption in the area of proper marketing and regulation of food, a realm traditionally in the power of the States.").

ASR argues that Valdes' challenge to the Products' ingredient list "absolutely, positively still 'effectively challenge[s] an organic certification . . . and strike[s] at the very heart of the OFPA.'" (D.E. # 27-1 ("Mem. in Support") at 1 (citing Marentette, 886 F.3d at 117–118).) It reasons that organic certification is "inextricably linked" to and is "dependent upon and certifies the accuracy and the organic credentials of the ingredient list," and therefore Valdes' entire FAC is preempted under Marentette. (Id. at 1–2, 6–9.)

Valdes' FAC does not fall within the scope of obstacle preemption as articulated in Marentette. The OFPA regulates the process in which a product is certified as organic, and the Second Circuit was clear that the OFPA only preempts "state law challenges to the certification decision itself," and not "state law challenges to the facts underlying certification." Marentette, 886 F.3d at 119. Here, Valdes is not challenging the inaccuracy of the Products' "USDA Organic" label, nor is she challenging the merits of the certification decision made pursuant to the OFPA. Instead, she asserts that her testing reveals that there is a material omission on the Products' ingredient list, and that this misrepresentation would cause a reasonable consumer to be deceived at the point of purchase. (D.E. # 28 ("Opp. Mem.") at 5). In Marentette, there was a direct

challenge to the fact that the product at issue contained the "USDA Organic" label. Plaintiffs in that case did not dispute the accuracy of the product's ingredient list, which disclosed that the product "contain[ed] 16 ingredients" that were alleged to be "prohibited by the OFPA." Marentette, 886 F.3d at 114. Valdes' FAC presents a different claim, one that is "truly independent of the decision to certify" the Products as organic. Marentette, 886 F.3d at 118. The success or failure of the FAC rests squarely on if Valdes can substantiate her claim that ASR's Products contain substances that were not listed on the ingredient list. Unlike the complaint in Marentette, the FAC does not present an obstacle to the OFPA statutory scheme—it does not require the Court to "look behind" the certification decision to determine if Valdes' claims will be meritorious. Id. at 119.

ASR correctly points out that for its products to have received an organic certification under the OFPA, a "'certifying agent review[ed] all of the substances [and] materials to be used in the production [and] handling process, including all of the ingredients,' and determined that the producer and handler did not 'inten[d] to include a prohibited ingredient.'" (Mem. in Support at 8 (citing Marentette, 886 F.3d at 119; 7 C.F.R. §§ 205.201, 205.400, 205.401, 205.405).) It argues that because the contents of the ingredient list were reviewed by the certifying agent, a favorable outcome for Valdes in this case would necessarily conflict with the certification decision pursuant to the OFPA statutory scheme. (Id. at 8–9.) But what is also true about OFPA's certification process is that certifying agents "generally do not inspect or certify batches of products." Marentette, 886 F.3d at 114. It therefore is entirely possible for two things to be true: the certifying agent fully performed the process as articulated by the OFPA, and ASR's products contain substances not listed on the ingredient list. Preemption is therefore not appropriate—the FAC does

not generate a conflict "so direct and positive that the two acts cannot be reconciled or consistently stand together." In re MTBE, 725 F.3d at 102.

Valdes' complaint does not directly "challenge[] the certification decision" of the OFPA certifying agent, and if her claim were to succeed, it would not necessarily present a conflict that is irreconcilable with the certification decision. The Court therefore concludes that the FAC is not preempted by the OFPA under the analysis conducted in Marentette.

## II. Standing

ASR next contends that Valdes has not sufficiently pled an injury-in-fact to confer standing to bring her claims. It further challenges Valdes' standing to pursue both her claim for injunctive relief and her class-action claims under the consumer protection statutes of forty states and the District of Columbia. ASR's position has merit with respect to the injunctive relief but does not with respect to Valdes' pleading of injury-in-fact or to the state-law consumer protection statutes.

ASR first argues that Valdes "has not alleged that she tested the specific product she purchased for possible adulteration," and therefore even if the FAC alleges that "some portion of the proposed class was deceived by the products' labeling" Valdes had failed to demonstrate that she herself has suffered an injury-in-fact. (Mem. in Support at 11–12 (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016)).) The Court disagrees. Valdes alleges that she "purchased C&H Agave from Amazon.com in 2017," (FAC ¶ 10), and that she conducted her own "testing of [ASR's] Products" which revealed that it contained isomaltose, "a component that is not naturally found in pure agave syrup." (FAC ¶ 4). She further states that she made her purchase in reliance on representations on the Product's ingredient list that it contained only agave syrup, and that she would not have purchased the Product had she known it contained synthetic sweeteners. (FAC ¶ 10.) Drawing all reasonable inferences in Valdes' favor, the Court determines that she has

11

sufficiently pled that the product that she purchased contained isomaltose. She therefore has

suffered an injury-in-fact sufficient to confer standing. See John v. Whole Foods Market Grp.,

858 F.3d 732, 737 (2d Cir. 2017) (holding that when a defendant challenges a plaintiff's standing,

"it remains the case that courts should continue to draw from the pleadings all reasonable

inferences in the plaintiff's favor and are to presume that the general allegations embrace those

specific facts that are necessary to support the claim") (internal quotations and alterations

omitted).[2]

As for the various state-law consumer-protection claims, ASR argues that Valdes, as a

"resident of New York" who "does not allege that she purchased any ASR product in—or has any

relevant connection to—states other than New York . . . 'only possibly ha[s] standing to bring

consumer fraud claims under the consumer fraud statutes of New York.'" (Mem. in Support at 15

(quoting Simington v. Lease Fin. Grp., 2012 WL 651130, at *7 (S.D.N.Y. Feb. 28, 2012)).) ASR's

argument confuses constitutional standing with the class-action requirements under Rule 23 of the

Federal Rules of Civil Procedure. "[A]s long as the named plaintiffs have standing to sue the

named defendants, any concern about whether it is proper for a class to include out-of-state,

nonparty class members with claims subject to different state laws is a question of predominance

under Rule 23(b)(3), not a question of adjudicatory competence under Article III." Langan v.

Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 93 (2d Cir. 2018) (internal citations

---

[2] In a supplemental submission, ASR points to the recent case of Gaminde v. Lang Pharma Nutrition, Inc., No. 18-CV-300 (GLS), 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019), which dismissed the plaintiff's complaint for lack of standing because he failed to allege that he tested the particular product that he had purchased. (D.E. # 35.) However, in that case, the plaintiff had not conducted his own testing at all—he relied exclusively on "independent research funded by the United States Department of Agriculture . . . and published in the Journal of Science of Food and Agriculture." Gaminde, 2019 WL 1338724, at *1. Because the plaintiff relied exclusively on a third-party study, the Court found his allegations to be no more than "speculation." Id. at *2. By contrast here, Valdes has alleged that she has conducted her own testing of ASR's Products. (FAC ¶ 4.) The Court therefore finds the reasoning of Gaminde to be unpersuasive to the facts of this case. ASR's standing argument can be renewed at summary judgment if the undisputed facts ultimately show there is no sufficient basis to conclude that the product Valdes purchased contained isomaltose.

omitted). Valdes has plausibly alleged "(1) that [she] personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant[]." Ret. Bd. of Policeman's Annuity & Benefit Fund v. Bank of N.Y. Mellon, 775 F.3d 154, 161 (2d Cir. 2014). That is sufficient to assert standing and defeats ASR's contention that Valdes lacks standing to sue under the consumer protection statutes of forty other states and the District of Columbia.

With respect to injunctive relief, Valdes alleges only past harm and provides no indication of "a continuing violation or the imminence of a future violation." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 108 (1998). Valdes does not continue to be deceived by ASR's purportedly inaccurate ingredient list, nor does she allege an intent to purchase the product again in the future unless the "labeling of the Product [is] truthful." (FAC ¶ 10.) Such holes are fatal to her claim for injunctive relief. See, e.g., Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018) (upholding the district court's dismissal of plaintiff's claims for injunctive relief because plaintiff would not purchase the product at issue once he knew of the alleged deception and false advertising); Chen v. Dunkin' Brands, No. 17-CV-3808 (CBA), D.E. # 23 (E.D.N.Y. Sept. 18, 2018); Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).[3] "Nothing supports the requested injunctive relief except [Valdes'] generalized interest in deterrence, which is insufficient for purposes of Article III." Steel, 523 U.S. at 108; see also O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974); Nicosia v. Amazon.com, Inc., 834 F.3d 220,

---

[3] Defendant notes a line of district court cases that have, on public policy grounds, found Article III standing to bring consumer protection claims in absence of a continuing violation. (Opp. Mem. at 32–34); see, e.g., Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). "However, the weight of authority in this Circuit directs a different outcome." Kommer v. Bayer Consumer Health, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017), aff'd, 710 F. App'x. 43 (2d Cir. 2018). This "weight of authority" is more faithful to the Supreme Court's precedent—Steel in particular—and for this reason, the Court declines to follow the Belfiore line of cases.

239 (2d Cir. 2016). Because Valdes fails to show individual standing to pursue injunctive relief, she fails to plausibly allege class standing. See Ret. Bd. of the Policeman's Annuity & Benefit Fund, 775 F.3d at 161. The Court accordingly dismisses Valdes' claim for injunctive relief due to lack of standing. See, e.g., Davis v. Hain Celestial Grp., Inc., No. 17-CV-5191 (ARR), 2018 WL 1611375, at *8 (E.D.N.Y. Apr. 3, 2018).

## III.   Personal Jurisdiction

ASR also asserts that this Court lacks personal jurisdiction to adjudicate the claims of the putative class members that are not citizens of New York. (Mem. in Support at 16–17.) The Court agrees with ASR that it lacks general personal jurisdiction over ASR to adjudicate the claims of the out-of-state class members because ASR is incorporated in the state of Delaware and its principal place of business is the state of Florida. See Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). However, it is much closer as to whether this Court has specific personal jurisdiction over ASR to adjudicate the FAC's non-New York claims brought on behalf of unnamed class members.

ASR contends that the proper interpretation of the Supreme Court's recent opinion in Bristol-Meyers Squibb v. Superior Court of California, 137 S. Ct. 1773 (2017), precludes this Court from exercising personal jurisdiction over ASR with respect to the claims asserted on behalf of the putative out-of-state class members. (Mem. in Support at 16.) Valdes argues that Bristol-Meyers is not applicable to this case because she has brought a class action in federal court, and Bristol-Meyers concerned a mass-tort action in state court. (Opp. Mem. at 23.)

In Bristol-Meyers, over 600 individual plaintiffs, including both California and non-California residents, brought a mass-product-liability action in California state court against Bristol-Meyers Squibb. 137 S.Ct at 1777. Bristol-Meyers Squibb challenged the state court's jurisdiction over the non-residents' claims on the ground that neither the conduct challenged, nor

those plaintiffs' injuries, had occurred in California. Id. at 1781. The Supreme Court held that the mere fact that there were plaintiffs who were residents of California whose injuries occurred in California did not mean that the State was permitted to assert specific personal jurisdiction over non-residents' claims, who lacked any connection to California. Id. at 1781–82.

Similarly here, ASR has challenged federal court jurisdiction over non-residents' claims on the ground that the non-resident putative class members did not incur the alleged injuries in New York, because they purchased ASR's Products in other states. However, Bristol Meyers differs from this case in two significant ways: (1) Bristol-Meyers was filed in state court, and this case was filed in federal court; and (2) Bristol-Meyers addressed mass tort actions, and this case is a class-action. The Supreme Court explicitly stated that it was not answering "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Bristol-Meyers, 137 S. Ct. at 1784. Justice Sotomayor also noted in her dissent that the Court did not address if its opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at 1789 n.4 (Sotomayor, J., dissenting).

"These issues have not yet been resolved by the Supreme Court or the circuit courts, and federal district courts are split." Gonzalez v. Costco Wholesale Corp., No. 16-CV-2590 (NGG), 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018) (citing § 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6:26 (5th ed. 2018)). Some district courts have declined to extend the logic of Bristol-Meyers to class actions filed in federal court. See e.g., Molock v. Whole Foods Mkt., Inc., 297 F. Supp. 3d 114, 126 (D.D.C. 2018), appeal docketed No. 18-7162 (Oct. 31, 2018); Becker v. HBN Media, Inc., No. 18-CV-60688, 2018 WL 3007922, at *2 (S.D. Fla. June 6, 2018); Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-CV-564 (NC), 2017 WL 4224723, at *5

(N.D. Cal. Sept. 22, 2017). Other courts have dismissed class-action claims relying on Bristol-Meyers. See, e.g., Spratley v. FCA US LLC, No. 17-CV-0062 (MAD), 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017); DeBernardis v. NBTY, Inc., No. 17-CV-6125 (HDL), 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018).

In this case, Valdes has yet to move to certify a nationwide class. Courts in this circuit facing similar circumstances, noting the "unsettled nature of the law following Bristol-Meyers," have "defer[red] resolution of this issue until Plaintiff files a motion for class certification." Gonzalez, 2018 WL 4783962, at *8; see also Bank v. Creditguard of America, No. 18-CV-1311 (PKC), 2019 WL 1316966, at *12 (E.D.N.Y. Mar. 22, 2019) ("the Court declines to consider whether to dismiss the TCPA class claim until class certification is sought"); Suarez v. California Natural Living, Inc., No. 17-CV-9847 (VB), 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) ("At present, the potential out-of-state class members are precisely that—potential class members who are not, and may never be, joined in this action. Thus, the Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class comprising out-of-state class members merits certification."); Campbell v. Freshbev LLC, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (same). The Court here believes it prudent to follow this course and will defer its consideration of personal jurisdiction until Valdes files a motion to certify a nationwide class, should she choose to do so.

## IV. Substantive Claims

ASR moves to dismiss Valdes' claims under Rule 12(b)(6) for failure to state a claim. It first presents a general argument that Valdes' claims "are not plausible under any legal theory," because they do not meet the pleading standards under Rule 8. It then alleges that Valdes, (1) has failed to meet the heightened pleading requirements with respect to Rule 9(b) for her Florida

common law fraud claim, (2) failed to adequately plead her "catch all" claim for violations of other states' consumer protection laws, and (3) that her unjust enrichment claim is duplicative. The Court will address each in turn.

## A. Federal Rule of Civil Procedure 8

ASR argues that Valdes' entire Complaint fails to satisfy the general pleading requirements under Rule 8, and therefore fails "under any legal theory." Rule 8 requires "factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Anderson News, LLC v. Am. Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012) (quoting Twombly, 550 U.S. at 555). Those "factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action," Anderson News, 680 F.3d at 182 (emphasis omitted).

Valdes alleges that the Product's ingredient list contains a single ingredient: "Organic Blue Agave Nectar Syrup." (FAC ¶ 2.) She further pleads that she purchased and tested ASR's Product, which indicated the presence of isomaltose. (Id. ¶ 4.) She then cites a scientific study to support the conclusion that "isomaltose . . .[is] not naturally seen in" agave syrup, (FAC ¶ 22) and that "[i]somaltose is found in a variety of sweeteners, including [High Fructose Corn Syrup], and thus serves as a marker for the presence of adulteration in agave syrups," (FAC ¶ 24; see also id. n.5). She further alleges, through the Eurofins study, that there is a "high level of nonconforming materials" in commercial agave syrups more generally, and that "in the majority of products tested," Eurofins found that products that have been adulterated with synthetic sweeteners contain

the presence isomaltose.[4] (FAC ¶ 21.) Accepting the allegations as true and in the light most favorable to Valdes, she has a plausible claim under at least some of her legal theories.

ASR primarily contends that the FAC is deficient because it "conceals all details" of the alleged testing that Valdes performed on the Products. (Mem. in Support at 11.) Because Valdes does not disclose "[w]hich of the specific products were tested," "[w]hen the tests were conducted," or "[h]ow many of the products were tested," ASR argues it is "left guessing" about its purported wrongful conduct. (Id. at 11, 13.) Valdes responds that Rule 8 "does not require [her] to disclose the details of her Product testing" at this stage of the proceedings. (Opp. Mem. at 12.) ASR provides no authority to support the claim that a plaintiff must provide the results of her testing and the details of her testing methodology in order to survive a motion to dismiss. Given the liberal pleading standards of Rule 8, that level of detail need not be disclosed at this stage. See, e.g., Webb v. Dr. Pepper Snapple Grp., Inc., No. 4:17-CV-624 (CV), 2018 WL 1955422, at *4 (W.D. Mo. Apr. 25, 2018) ("Specific details concerning the laboratory testing are unnecessary at the pleading stage"); Fonseca v. Goya Foods, Inc., No. 16-CV-2559 (LHK), 2016 WL 4698942, at *5–*6 (N.D. Cal. Sept 8, 2016) (finding that a Complaint relying upon DNA testing plausibly stated a claim although there were "no allegations in the complaint of when this testing was done, who performed the testing, what were the results of the testing, where the testing took place, or the type of equipment or scientific method used"). The FAC puts ASR on sufficient notice that Valdes' allegations are that ASR's Product contains a mislabeled ingredient list and that the product was adulterated with a synthetic sweetener. This is sufficient for the purposes of withstanding a 12(b)(6) motion.

---

[4] The Court has reviewed the Eurofins study, and while it discusses the adulteration of agave syrup generally, it does not specifically reference ASR's products.

ASR does not direct its Rule 8 argument as to any specific count of Valdes' FAC, and does not independently of its Rule 8 argument challenge Counts I and II claiming violations of the New York Consumer Protection Act, and Count V claiming breach of express warranty. Nonetheless, the Court will address whether these claims are adequately pled.

### 1. Violation of New York's Consumer Protection Act

The New York Consumer Protection Act, NYGBL §§ 349 and 350, "seeks to secure an honest market place where trust, and not deception, prevails." Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 324 (2002). NYGBL § 349 declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). "A plaintiff under section 349 must prove three elements; first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]" Tomasino, 44 F. Supp. 3d at 257 (quoting Stutman v. Chem. Bank, 709 N.Y.S.2d 892, 895 (2000)). The second element requires, whether it is a representation or omission, that the defendant's misleading or deceptive conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Id. A claim of false advertising under Section 350 must meet the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance. Id.

Courts in this circuit have frequently denied motions to dismiss in cases where plaintiffs have claimed violations of the New York Consumer Protection Act after they purchased products labeled as "natural" that they allege in fact contained synthetic or artificial ingredients. See e.g., Petrosino v. Stearn's Products, Inc., 16-CV-7735 (NSR), 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) (denying a motion to dismiss on plaintiff's NYGBL §§ 349 & 350 claims for defendant's

cosmetic products labeled, among other things, as "natural" when they were alleged to contain "a combination of 22 synthetic and/or artificial ingredients"); Buonasera v. Honest Company, Inc. 208 F. Supp. 3d. 555, 566 (S.D.N.Y. 2016) (denying a motion to dismiss as to NYGBL §§ 349 & 350 claims where a plaintiff alleged that defendant's shampoo product "deceptively label[ed] its products as 'natural'" when the "ingredients list discloses that the product contain[ed] synthetic and toxic ingredients"); Silva v. Smucker Natural Foods, Inc., No. 14-CV-6154 (JG), 2015 WL 5360022, at *9–*10 (E.D.N.Y. Sept. 14, 2014) (denying a motion to dismiss as to NYGBL §§ 349 & 350 claims where plaintiff alleged that defendant's "natural" root beer product "contained artificial ingredients, specifically caramel color and phosphoric acid"). These decisions reason that a court cannot conclude as a matter of law that a consumer acting reasonably would not be misled by a label advertising a product as "natural," even if a product's ingredient list states that it contains synthetic and artificial ingredients. E.g. Petrosinio, 2018 WL 1614349, at *7 (finding that it was not unreasonable as a matter of law to expect a product labeled "natural" to contain only natural ingredients "even if mildly qualifying language or synthetic ingredients are listed on the product's packaging"); Silva, 2015 WL 5360022, at *6 n. 5 ("An FDA-mandated ingredients list on the back of the label does not inoculate a manufacturer from claims that they misrepresented the product on the front of the label; consumers are not expected to scour a label to ensure that prominent representations are not false.") Valdes' FAC presents an even stronger case to deny the motion to dismiss—she alleges that ASR's ingredient list itself omits synthetic and artificial ingredients. If a reasonable consumer could be misled by a "natural" labeling on a product where the ingredient list discloses synthetic substances, she can be misled by an inaccurate or incomplete ingredient list.

## 2. Express Warranty

To state a claim for breach of an express warranty, "a plaintiff must allege an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." Buonasera, 208 F. Supp. 3d at 567. Under Section 2–313(1) of the New York Uniform Commercial Code, an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2–313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description." N.Y. U.C.C. § 2–313(10)(b); see also Silva, 2015 WL 536002, at *10. Valdes' allegations assert that there are artificial ingredients present in ASR's Products that are not listed on the ingredient list. If true, ASR's Products do not conform to the descriptions contained on its label. Valdes further alleges that she relied on the representations of the ingredient list in her decision to purchase the Product and would not have purchased the Product had the ingredient list been accurate. She has sufficiently stated an express-warranty claim.

## B. Florida Common Law Fraud

Valdes brings a claim alleging fraud "under Florida common law." (FAC ¶117–125.) Under Florida law, to make out a claim for common-law fraud a plaintiff must allege, among other elements, that a defendant made "a false statement of fact" that was "known by the person making the statement to be false at the time it was made." Gandy v. Trans. World Comput. Tech. Grp., 787 So. 2d 116, 118 (Fla. Dist. Ct. App. 2001). Under Rule 9(b), the elements of fraud must be plead "with particularity." While the "requisite intent of the alleged speaker of the fraud need not

be alleged with great specificity," a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Woods v. Maytag Co., 807 F. Supp. 2d 112, 119–20 (E.D.N.Y. 2011).

ASR contends that Valdes does not allege "any facts that suggest" that ASR had any knowledge that the products were adulterated or that its ingredient list was inaccurate, much less "facts that give rise to a strong inference of fraudulent intent." (Mem. in Support at 14 (citing Woods, 807 F. Supp 3d at 120)). The Court agrees. Valdes' sole allegation with respect to ASR's knowledge or fraudulent intent is that ASR provided class members with "false or misleading material information and fail[ed] to disclose material facts about the products, including, but not limited to the claims regarding the Products' ingredients and qualities. These misrepresentations and omissions are made with knowledge of their falsehood." (FAC ¶ 119.) Such a conclusory allegation is insufficient to carry the heightened pleading requirement of Rule 9(b). While it is true that ASR's mental state can be "alleged generally," Fed. R. Civ. P. 9(b), "this relaxation of the heightened pleading requirement is not be mistaken for a license to base claims of fraud on speculation and conclusory allegations." Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 176 (2d Cir. 2015) (internal citations omitted).

Valdes contends that she does allege facts that give rise to a strong inference of fraudulent intent. She points to the fact that both she and Eurofins conducted testing that indicates that the Products were adulterated, and to the fact that ASR had financial incentive to engage in "extension" of its agave syrup to save costs. (Opp. Mem. at 18). Yet "a general profit seeking motivation . . . is insufficient to allege fraudulent intent." Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 401 (E.D.N.Y. 2018); see also DeSilva v. North Shore-Long Island Jewish Health Sys., 770 F. Supp. 2d 497, 528 (E.D.N.Y. 2011) ("the only motive ascribed to Defendants is a generalized profit motive that could be imputed to any company, which has been

consistently rejected as a basis for inferring fraudulent intent.") (internal quotations omitted); In re Morgan Stanley & Van Kampen Mut. Fund. Sec. Litig, No. 03-CV-8208 (JO), 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) ("[A]llegations that defendants stand to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b).") Further, Valdes' argument presumes that ASR has manufactured the Products itself. Valdes does not allege in the FAC that ASR manufactured the Products, see, e.g., FAC ¶ 1 (stating that ASR "offers" its Products "for sale" under several brand names, but does not allege that it manufactures the Products), a fact ASR claims she could not allege because it simply distributes the Products that are "manufactured by an independent supplier in Mexico." (D.E. # 29 ("Reply Mem.") at 7.) Valdes' argument with respect to the financial incentives of extension would apply with equal force to ASR's supplier, who would be similarly motivated to sell ASR agave nectar at an inflated price. Without an allegation that ASR is even the manufacturer of the product, and with this equally plausible alternative, the pleadings are insufficient to give rise to a strong inference of fraudulent intent. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007) ("To determine whether the plaintiff has alleged facts giving rise to the requisite 'strong inference,' a court must consider plausible, nonculpable explanations for the defendant's conduct . . . the inference that the defendant with scienter need not be irrefutable, but it must be more than merely 'reasonable' or permissible'—it must be cogent and compelling, thus strong in light of other explanations").

Because Valdes has failed to plead fraud consistent with the heightened pleading standard of Rule 9(b), Count IV of the FAC is dismissed with leave to replead if she has additional facts that she can allege to render plausible her claim of fraud.

### C. Claims pursuant to 40 Other States' Consumer Protection Statutes

ASR argues that because Count III of the FAC "merely contains a list of the consumer protection laws of 40 states . . . coupled with a conclusory allegation that ASR 'violated the aforementioned states' unfair and deceptive acts and practices laws'" it should be dismissed. (Mem. in Support at 17–19.)

The "consumer fraud . . . laws in the fifty states differ in relevant respects." In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 147 (S.D.N.Y. 2008); see also In re Aluminum Warehousing Antitrust Litigation, No. 13-MD-2481 (KBF), 2014 WL 4743425, at *1 (S.D.N.Y. Sept. 15, 2014) ("there is considerable variation in the elements of the state consumer protection statutes under which plaintiffs seek relief"). For instance, ASR highlights that at least eight of the state consumer fraud laws identified by Valdes require a heightened pleading standard when the complaint sounds in fraud. (Mem. in Support at 17–18 & n. 12.) District courts in this circuit and elsewhere have held that "merely listing [consumer protection] statutes that could provide possible causes of action without explaining even the broadest contours of how those statutes were violated is insufficient to state a claim." In re Trilegiant Corp., Inc., 11 F. Supp. 3d 82, 124 (D. Conn. 2014) (internal quotations omitted); see also In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litig., 701 F. Supp. 2d 356, 378–79 (E.D.N.Y. 2010); District 1199P Health and Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 531 (D. N.J. 2011).

Although Valdes contends that the FAC is pled with "sufficient detail and meet[s] the requirements of FRCP 9(b)," (Opp. Mem. at 27), she has "not attempted to explain how [ASR's] conduct fits into each of the undoubtedly varying elements of the statutory schemes," In re Trilegiant Corp., 11 F. Supp. 3d at 125; see also In re Aluminum Warehousing Antitrust Litigation,

2014 WL 4743425, at *1 (dismissing a claim when plaintiff "simply provide[d] lists of state consumer statutes, without even listing elements of these statutes, let alone explaining how their factual allegations establish valid claims for relief under them.") Valdes contends that the differences between the state statutes is something that should be handled not at this stage, but at the class certification stage. (Opp. Mem. at 30.) But to reach the certification stage Valdes' complaint needs to survive a motion to dismiss, and "[p]laintiffs cannot use class actions to escape pleading requirements." In re Bayer Corp., 701 F. Supp. 2d at 378.

Valdes also responds by stating that ASR has attempted to bring a motion to strike pursuant to Rule 12(f). But ASR is not seeking to dismiss plaintiff's claim as "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Instead, it is simply arguing that Valdes has failed to adequately state her claim pursuant to Rule 8. The Court agrees. Count III of the FAC is dismissed without prejudice and with leave to replead with the requisite level of particularity.[5]

### D. Unjust Enrichment

ASR argues that Valdes' unjust enrichment claim is duplicative of her other claims, and therefore must be dismissed. In response, Valdes alleges that her claim is not duplicative because "that question may be answered through discovery," and that she may "plead [her] unjust enrichment claim[] in the alternative to [her] other claims." (Mem. in Support at 19.)

To state a claim for unjust enrichment under New York law, a plaintiff must plead (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances were such that equity and good conscience require the defendant to make restitution. Hughes v. Ester C. Co., 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013); accord Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the

---

[5] Although ASR has moved to dismiss the claims based in consumer protection statutes from states other than New York, it does not similarly move to dismiss the claims based in warranty laws from states other than New York.

defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff."). The New York Court of Appeals has held that an unjust enrichment claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello, 18 N.Y.3d at 790. It is not a "catchall cause of action to be used when others fail" and is typically limited to instances where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id. "An unjust enrichment claim that merely 'duplicates, or replaces, a conventional contract or tort claim' is insufficient." Silva, 2015 WL 5360022, at *12 (quoting Corsello, 18 N.Y.3d at 790).

In cases involving the deceptive labeling of consumer goods, courts in this district have frequently dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to dismiss stage. See, e.g., Axon v. Citrus World, Inc. 18-CV-4162 (ARR) 2018 WL 6448648, at *8 (E.D.N.Y. Dec. 10, 2018); Gonzalez, 2018 WL 4783962, at *11; Silva, 2015 WL 5360022, at *12. Because Valdes' unjust enrichment claim merely duplicates her other causes of action based on the same alleged misrepresentations, Count VI of the FAC is dismissed.

**CONCLUSION**

For the reasons stated above, the Court grants in part and denies in part ASR's motion to dismiss. The Court dismisses Count III (Violation of Non-New York State Consumer Protection Statutes), Count IV (Florida Common Law Fraud), and Count VI (Unjust Enrichment) of Valdes' FAC, as well as her claim for injunctive relief. The Court denies ASR's motion to dismiss with respect to Counts I and II (Violation of the New York Consumer Protection Act), and Count V (Breach of Express Warranty).

SO ORDERED.

Dated: March 28, 2019
      Brooklyn, New York

                                      s/Carol Bagley Amon
                                       Carol Bagley Amon
                                       United States District Judge